UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PAWTUCKET TRANSFER OPERATIONS, LLC,<br>*Plaintiff,*<br>vs.<br>CITY OF PAWTUCKET, et al.<br>*Defendants.* | C.A. No. 05-520 S |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted by,

Marc DeSisto (#2757)
Michael A. DeSisto (#2444)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com
michael@desistolaw.com

# TABLE OF CONTENTS

I. PLEADINGS

II. DESCRIPTION OF MOTION

III. FACTS

IV. ISSUES

V. POINTS AND AUTHORITIES

*A. Standard of Review - Motion for Summary Judgment*

*B. Defendants are entitled to summary judgment on Plaintiff's § 1983 procedural due process claim because Plaintiff does not have a property interest and received adequate post-deprivation remedies.*

*C. Defendants are entitled to summary judgment on Plaintiff's § 1983 substantive due process claim because Plaintiff does not have a property interest and Defendants' conduct was not egregiously unacceptable, outrageous or conscious-shocking.*

*D. Defendants are entitled to summary judgment on Plaintiff's equitable estoppel/detrimental reliance claim because the Zoning Certificates were not enforceable, were not issued by a duly authorized City official and Plaintiff could not justifiably rely on them.*

*E. Defendants are entitled to summary judgment on Plaintiff's intentional interference with contractual relations and interference with prospective economic advantage claims as Plaintiff cannot establish the elements of either claim.*

*F. Conclusion*

## I. PLEADINGS

Plaintiff, Pawtucket Transfer Operations, LLC, has filed a six (6) count Complaint against the Defendants, City of Pawtucket, by and through its Treasurer, Ronald L. Wunschel, City of Pawtucket Zoning Board of Review, by and through its Members, and Michael Cassidy in his capacity as Director of the City of Pawtucket Planning and Redevelopment Commission. Plaintiff seeks to recover under *42 U.S.C. § 1983* for alleged procedural and substantive due process violations arising out of the "revocation" of two Zoning Certificates. *Plaintiff's Complaint, Counts I and II.* The last four counts of Plaintiff's Complaint allege state law claims and include equitable estoppel/detrimental reliance, *Plaintiff's Complaint, Counts III and IV,* interference with contractual relations, *Plaintiff's Complaint, Count V,* and interference with prospective economic advantage, *Plaintiff's Complaint, Count VI.*

Defendants deny Plaintiff's allegations and submit that they are entitled to summary judgment in their favor based on the undisputed facts of this case.

## II. DESCRIPTION OF MOTION

This case concerns what may be termed a conventional dispute between a developer and a city planning agency. Plaintiff filed an application with the City Planning Commission to operate a refuse transfer station in the City of Pawtucket. The Director of the Planning Department determined that Plaintiff needed to obtain a use variance to operate a transfer station. Therefore, he instructed Plaintiff to obtain one from the Zoning Board before the Planning Commission would consider Plaintiff's application. Plaintiff disagree with this decision and filed an appeal to the Zoning Board of Appeals. The Zoning Board upheld the decision of the Planning Director. Once again,

utilizing its appellate rights under the Pawtucket Ordinances, Plaintiff filed an appeal to the state court. Plaintiff also filed the instant lawsuit alleging constitutional and state law claims.

In the First Circuit, it is well-settled that conventional planning disputes do not implicate the Constitution unless tainted with fundamental procedural irregularity, racial animus or the like. The instant case is a conventional planning dispute without the taint of any fundamental procedural irregularity or prohibited animus. Plaintiff was dissatisfied with the decisions of the Pawtucket planning officials but successfully utilized the administrative and state law appellate process. While Plaintiff may be dissatisfied with the decisions of the City officials, and the time involved with the appeal process, this dissatisfaction does not translate into procedural and/or substantive due process claims against the Defendants. Similarly, the actions taken by Defendants in this conventional planning dispute do not give rise to the state law claims asserted by Plaintiff.

## III. FACTS

Plaintiff, Pawtucket Transfer Operations, LLC, is a Rhode Island Limited Liability Company. [1] On or about August 1, 2003, Plaintiff submitted a Site Plan Review Request Form ("Site Plan Application"), pursuant to Article IIIA § 410-15.1 of the Pawtucket Zoning Ordinance, to the City Planning Commission. [2] *The July 31, 2003 Site Plan Application is attached hereto as Exhibit A*. The Site Plan Application sought

[1] Pawtucket Transfer Operations, LLC changed its name to Boshad, LLC on June 20, 2005, according to the records of the Rhode Island Secretary of State.
[2] The Site Plan Application cover letter was addressed to Ronald Travers, Zoning Official for the City of Pawtucket. It should have been addressed to Michael Cassidy, Director of the Department of Planning and Redevelopment.

permission to operate a "railroad shipping operations/transfer station for refuse" on a parcel of land located at 280 Pine Street in Pawtucket (the "Parcel"). In answer to the Site Plan Application question whether Zoning Board approval was required for the proposed change, Plaintiff circled "no" noting that "Property is currently zoned for this usage." Plaintiff also enclosed a copy of a Certificate of Zoning Compliance, dated February 27, 2003, and signed by Todd Olbrych, Building Official. According this Certificate, the proposed use – Refuse Transfer station – conformed to the Zoning Ordinance. *The February 27, 2003 Certificate of Zoning Compliance is attached hereto as Exhibit B.*[3]

The Site Plan Application was followed by an August 5, 2003 letter requesting that the City schedule a hearing for the August 2003 Planning Board meeting. The letter stated that Plaintiff was "in the process of permitting this project through the Rhode Island Department of Environmental Management (RIDEM)." According to the letter, Plaintiff was advised by RIDEM to pursue City approval of the project concurrent with RIDEM permitting.

On August 12, 2003, Michael Cassidy, the Department of Planning and Redevelopment Director, responded by requesting, among other things, a copy of the RIDEM application to allow the City Planning Commission to undertake a thorough, accurate and complete review of the site plan and project request. As a result, no hearing was held by the City Planning Commission. On February 27, 2004, RIDEM notified

---

[3] Although not included with the Site Plan Application, a Certificate of Zoning Compliance was issued for the Parcel on September 24, 2002 to Daniel J. Poggi, Jr. with a business name of Pawtucket Railway Hauling, LLC. This Certificate contains the same use as the later issued Certificate and Daniel J. Poggi, Jr. appears to have a business relationship with Plaintiff. The September 24, 2002 Zoning Certificate is attached as Exhibit C. (The September 24, 2002 and February 27, 2003 Certificates of Zoning Compliance are collectively referred to as the Zoning Certificates.)

Plaintiff, through its duly authorized representative, that it had reviewed Plaintiff's license application for its proposed "C&D [Construction and Demolition] Processing Facility and for a proposed Solid Waste Transfer Station." The review was not a positive one for Plaintiff. RIDEM noted that

> The submitted license application has numerous defects. All of the Department's comments shall be comprehensively addressed in the revised application submittal. The Department's final decision on the license application will be based on the next submittal. If the deficiencies described in the attached comments are not completely addressed, the license application will be denied.

*The 13 page RIDEM review is attached hereto as Exhibit D.*

On March 30, 2004, Plaintiff filed a second Site Plan Application ("Second Site Plan Application") with the Department of Planning and Redevelopment ("Planning Department"). *The Second Site Plan Application is attached hereto as Exhibit E.* This Second Site Plan Application differed from the earlier one in two ways. In the first Site Plan Application, Plaintiff was listed as the owner of the Parcel. In the Second Site Plan Application, the owner listed was Providence & Worcester Railroad Company. Secondly, the proposed use of the Parcel was now listed as "Railroad terminal and construction and demolition debris transfer station." Unfortunately, the Second Site Plan Application was incomplete requiring Plaintiff to submit additional information. Plaintiff produced the additional documents on or about April 28, 2004. Included in this information was a letter to the City, dated April 28, 2003, from Mary A. Tanona, General Counsel, Providence and Worcester Railroad Company ("P&W") stating that P&W had agreed to lease the Parcel to Plaintiff subject to execution of a mutually agreeable lease agreement, among other things.[4]

---

[4] The letter was received by the Planning Department on April 28, 2004 leading the Defendants to believe that the correct date of the letter should be April 28, 2004. A Memorandum of Lease was subsequently

By letter dated April 29, 2004, Michael Cassidy acknowledged receipt of the Second Site Plan Application. However, he stated that it was the opinion of the Planning Department that the February 27, 2003 Certificate of Zoning Compliance ("Zoning Certificate") was issued in error. The cited Zoning Board section – 410-12.5(I) - referred to public refuse transfer stations as being an allowable use. Plaintiff was proposing a private transfer station. Therefore, the Planning Department had referred the matter over to the City's Law Department for a legal opinion on whether Plaintiff's proposed use was allowed under the Zoning Ordinance.

On July 12, 2004, Mr. Cassidy notified Plaintiff, by letter, that the Law Department had determined that a private refuse transfer station was not an allowed use under Section 410-12 (5) of the Zoning Ordinance. Further, Plaintiff's RIDEM license application listed the use as a construction and demolition debris processing facility. This use was not an allowed use in any zone in the City of Pawtucket. Therefore, Plaintiff would need to obtain a use variance from the Zoning Board before the Second Site Plan Application could be heard by the City Planning Commission. *The July 12, 2004 letter is attached hereto as Exhibit F.*

On or about July 28, 2004, Plaintiff filed an appeal of the City Planning Commission's decision to the Zoning Board of Appeals pursuant to § 410-15.1(H)(4) of the Zoning Ordinance. In addition, Plaintiff filed an application for a use variance. This use variance application was subsequently withdrawn by Plaintiff on October 6, 2004. Plaintiff's appeal was heard by the Zoning Board on November 9, 2004. After an extensive hearing, Plaintiff's appeal was denied. Plaintiff then filed a timely appeal of

---

recorded in the Pawtucket Land Evidence Records on May 26, 2005 indicating that a lease agreement between Plaintiff and P&W was entered into on August 31, 2004.

the Zoning Board's decision in the Providence County Superior Court. On June 22, 2006, Superior Court Judge Stephen J. Fortunato issued a bench decision in favor of Plaintiff ruling that a refuse transfer station was a permitted use for the Parcel. *The transcript of Judge Fortunato's bench Decision is attached hereto as Exhibit G.*

In conjunction with filing its zoning appeal, Plaintiff also filed the instant lawsuit alleging, among other things, denial of its procedural and substantive due process rights in violation of *42 U.S.C. § 1983* as well as several state law claims.

**IV. ISSUES**

1. Whether Plaintiff can establish a constitutionally protected property interest in the Zoning Certificates?
2. Whether Plaintiff was provided adequate post-deprivation remedies?
3. Whether Defendants conduct was egregiously unacceptable, outrageous or conscience-shocking?
4. Whether the Zoning Certificates created any enforceable rights in Plaintiff?
5. Whether the Zoning Certificates were issued by a duly authorized representative of the City and Plaintiff justifiably relied on them?

**V. POINTS AND AUTHORITIES**

***A. Standard of Review - Motion for Summary Judgment***

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the [Civil] Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986)*. Summary

judgment is lawful and proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. In addition, "[s]ummary judgment is appropriate against a party who, after a sufficient time for discovery, 'fails to make a showing sufficient to establish the existence of a single element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Torraco v. Maloney, 923 F.2d 231, 232 (1st Cir. 1991)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986)).*

According to *Fed. R. 56(e)*:

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. *(Emphasis added)*.

Based upon the foregoing, the United States Supreme Court observed that the above two sentences of Rule 56(e) were added "to disapprove a line of cases allowing a party opposing summary judgment to resist a properly made motion by reference only to its pleadings." *Celotex Corp, 477 U.S. at 325, 106 S.Ct. at 2554*. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 2514 (1986).*

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id. at 249, 106 S.Ct. at*

*2511 (emphasis added).* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id. at 249-50, 106 S.Ct. at 2511 (emphasis added).* As the Court recognized:

> [n]or are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether where is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. *Id. at 251, 106 S.Ct at 2511 (emphases in original).*

Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id. at 252, 106 S.Ct. at 2512 (emphasis added).*

### *B. Defendants are entitled to Summary Judgment on Plaintiff's § 1983 Procedural Due Process Claim because Plaintiff does not have a Property Interest and Received Adequate Post-Deprivation Remedies.*

Count I of the Complaint contains Plaintiff's first claim against the Defendants. According to Plaintiff, Defendants "unlawfully revoked the Zoning Certificates without authority and in violation of the procedural requirements set forth in the Pawtucket Zoning Ordinance." *Plaintiff's Complaint, paragraph 30*. This "revocation" argues Plaintiff, was unconstitutional because it denied Plaintiff its procedural due process rights in violation of *42 U.S.C § 1983*, as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article One, Section Two of the Rhode Island Constitution. *Id. at 31*. In order to establish a procedural due process claim against

Defendants, Plaintiff must prove two elements. First, Plaintiff must show that it had a property interest as defined by state law. Second, Plaintiff must show that the Defendants, acting under color of state law, deprived it of that interest without adequate process. *SFW Arecibo, Ltd. v. Rodriguez, 415 F. 3d 135, 139 (1st Cir. 2005); PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991).* Plaintiff can satisfy neither element.

The United States Constitution does not define was constitutes a constitutionally protected "property interest." "Rather, [property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161; 101 S.Ct. 446, 451 (1980) quoting Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 2709 (1972).* Someone seeking to establish a property interest must clearly have more than an abstract need or desire for it. There must be more than a unilateral expectation of it. Instead, there must be a legitimate claim of entitlement to it. *Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002).* The property interest Plaintiff claims is the use contained in Zoning Certificates signed by Todd Olbrych, a former Pawtucket Building Official. However, these Zoning Certificates do not vest any rights in Plaintiff.[5]

In Pawtucket, the authority to issue a zoning certificate originates from R.I.G.L. § 45-24-54 and Section 410-93 of the Pawtucket Zoning Ordinances. R.I.G.L. § 45-24-54 states:

[5] Plaintiff filed the February 27, 2003 Zoning Certificate with its application. See Exhibit B. However, throughout the Complaint, Plaintiff references the earlier September 24, 2002 Zoning Certificate as well to support its position. For purposes of this motion, and without conceding the relevancy of the earlier Zoning Certificate, Defendants will reference both as well.

> "A zoning ordinance adopted pursuant to this chapter must provide for the administration and enforcement of its provisions pursuant to this chapter. The zoning ordinance must designate the local official or agency and specify minimum qualifications for the person or persons charged with its administration and enforcement, including: (1) the issuing of any required permits or certificates; (2) collection of required fees; (3) keeping of records showing the compliance of uses of land; (4) authorizing commencement of uses or development under the provisions of the zoning ordinance; (5) inspection of suspected violations; (6) issuance of violation notices with required correction action; (7) collection of fines for violations; and (8) performing any other duties and taking any actions that may be assigned in the ordinance. ***In order to provide guidance or clarification,*** the zoning enforcement officer or agency shall, upon written request, issue a zoning certificate or provide information to the requesting party as to the determination by the official or agency within fifteen (15) days of the written request. In the event that no written response is provided within that time, the requesting party has the right to appeal to the zoning board of review for the determination." *(emphasis added)*.

Section 410-93 follows this language and states, in pertinent part, that ***"[i]n order to provide guidance or clarification, the Director*** shall, upon written request, issue a zoning certificate or provide information to the requesting party within fifteen (15) days of the written request." *(emphasis added)*.

"Zoning Certificate" is defined in the Ordinance as "[a] document signed by the Director, as required in this chapter, which acknowledges that a use, structure, building, or lot either complies with or is legally nonconforming to the provisions of the municipal zoning ordinance or is an authorized variance therefrom." *Section 410-132*. *See* also *R.I. G.L. § 45-24-31(65)*. The "Director" is defined as the "Director of the Division of Zoning and Code Enforcement of the City of Pawtucket. *Id.* *The relevant Sections of the Pawtucket Zoning Ordinance are attached hereto as Exhibit H.*

As Section 410-93 and R.I.G.L. § 45-24-54 make clear, the purpose of the zoning certificate is to provide guidance or clarification; it does not vest any rights in a certificate holder. "[T]he purpose of the [zoning] certificate is plainly to provide no more

than informational assistance alone. Such a certificate does not operate to vest any rights in the owner of the property in question or the individual making the request for the certificate. (citations omitted) Therefore, although a zoning certificate may well serve as an indication about how a zoning official views the use, structure or building or lot insofar as it complies with the Ordinance – information that no doubt would be useful to property owners and others – it does not operate to create any enforceable rights or to divest existing rights." *Tompkins v Zoning Bd. of Review of the Town of Little Compton*, *2003 WL 22790829 (R.I. Super. 2003).*

The lack of enforceable rights is especially true in the instant case. Plaintiff requested a zoning certificate for a ***proposed*** use, not an ***existing*** use. The definition of a zoning certificate in the Ordinance and state law references present use, not future use. *See* Section 410-132 and *R.I. G.L. § 45-24-31(65)* *(A zoning certificate is "[a] document signed by the Director, * * * which acknowledges that a use, structure, building, or lot either complies with or is legally nonconforming * * * .")* The definition of a zoning certificate speaks of the present use of the property not a contemplated, proposed use. The *Tompkins* court noted

> "the purpose for which a zoning certificate is given is to provide information concerning the *present status* of the *existing* use, structure, building or lot but not *proposed* uses, structures, buildings or other development." *Id. at 11.* * * * "Thus, neither a zoning official nor zoning board of review may lawfully issue a zoning certificate for the purpose of making a binding or enforceable determination about whether or not a proposed use, structure, building or lot would be legal under a municipal ordinance. Given the language of the pertinent sections of the Enabling Act, it is clear that the practice of attorneys and landowners to request a zoning certificate as a means of gaining binding or enforceable administrative approval is wholly unavailing and is particularly so with respect to proposed uses or development. And, the endless hearings and litigation that have been spawned by the misuse of zoning certificates or misunderstanding of their significance is time poorly spent." *Id. at 12-13.*

It is clear from *Tompkins*, and the plain language of R.I.G.L. § 45-24-54 and Section 410-93, that a zoning certificate is for the limited purpose of providing non-binding, informational assistance only. A non-binding, informational certificate cannot create a constitutionally protected property interest. This fact is especially true where, as Plaintiff attempts here, the certificate is for a proposed use and not an existing use. In fact, Plaintiff is attempting to do what the *Tompkins*' court noted as an abuse: attorneys and landowners misusing the zoning certificate ordinance and statute "as a vehicle to gain administrative approval for proposed development and/or changes in use." *Id. at 9*. The proper method: "[w]here the use, structure, building or other development is proposed, as opposed to existing, it is only through the submission of proper applications for necessary permits that a party can gain an enforceable approval of proposed plans." *Id. at 13*. Further, in addition to the fact that the Zoning Certificates are non-binding and for informational purposes only, as will be discussed *infra*, Todd Olbrych was not authorized to issue them. For all these reasons, Plaintiff does not have a property interest in the Zoning Certificates and, therefore, cannot establish the first element of its procedural due process claim against Defendants.

Even if Plaintiff was able to show a constitutionally protected property interest, it cannot establish the second element of the procedural due process standard. The second element requires that Defendants, acting under color of state law, deprived it of that property interest without adequate process. *See SFW Arecibo, Ltd. v. Rodriguez, 415 F. 3d at 139.* In addressing this second element, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry should examine the procedural safeguards built into the statutory or administrative procedure * *

* effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon v. Burch*, *494 U.S. 113, 126 (1990).*

In the instant case, Mr. Cassidy, the Planning and Redevelopment Director determined that Plaintiff needed a use variance for the Parcel despite the Zoning Certificate. Plaintiff disagreed with this decision and, pursuant to the Pawtucket Zoning Ordinance, filed an appeal to the Pawtucket Zoning Board of Review. When this appeal failed, Plaintiff, once again, availed itself of the appeal provisions of the Pawtucket Zoning Ordinance, and state law, and filed an appeal to the state court. This appellate scheme contained the Pawtucket Ordinances follows state law. Defendants contend that these post-deprivation remedies afforded Plaintiff constitutionally adequate due process and, in fact, proved effective as Plaintiff was successful in the state court appeal.

Defendants can only assume that Plaintiff's procedural due process claim is based on the lack of a pre-deprivation hearing. A hearing was not held by Mr. Cassidy when he determined that, despite the existence of the Zoning Certificates, Plaintiff would need to apply to the Zoning Board for a use variance. However, it is well-settled that the lack of a pre-deprivation hearing does not, in and of itself, constitute a procedural due process violation. Instead, the Court must examine "the procedural safeguards built into the statutory or administrative procedure * * * effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Id*. The procedural safeguards in the instant case were the post-deprivation appellate procedures available to Plaintiff. *See also, PFZ Properties, Inc., 928 F2d at 31 ("When a deprivation of property results from conduct of state officials violative of the state law, the Supreme Court has held that failure to provide pre-deprivation process does not violate the Due*

*Process Clause.");* *<u>Amsden v. Moran</u>, 904 F.2d 748, 755 (1st Cir. 1990) ("The availability of judicial review is an especially salient consideration in situations where permits and licenses have been denied or revoked by state or local authorities in alleged derogation of procedural due process."); <u>SFW Arecibo, Ltd</u>., 415 F.3d at 139 ("[o]ur focus is on the availability of post-deprivation, rather than pre-deprivation, process . . ."); <u>Licari v. Ferruzzi</u>, 22 F.3d 344, 348 (1st Cir. 1994) ("There is further reason why the revocation of the building permits did not violate Colonial's right to procedural due process: post-deprivation remedies were available.")*

In the instant case, the post-deprivation remedies were more than adequate to satisfy procedural due process. Plaintiff's use of these post-deprivation remedies demonstrates their fairness. As the Court stated in *<u>Amsden</u>*, "the proof of the pudding is in the tasting: the process proved effective." *<u>Amsden</u>, 904 F.2d at 755*. Similar to the plaintiff in *<u>Amsden</u>*, Plaintiff was ultimately successful in the Superior Court. Plaintiff cannot establish the second element of the procedural due process standard as it received constitutionally adequate procedural due process.

Lastly, Defendants are protected by the doctrine of qualified immunity. "Qualified immunity shields government officials wielding discretionary powers 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *<u>Amsden</u>, 904 F.2d at 751 quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982).* The salient issue is not whether a plaintiff's rights were violated because qualified immunity protects even defendants who violate constitutional rights unless a

plaintiff is able to demonstrate that the defendant's conduct was objectively unreasonable under the applicable standard. *Id*.

In the instant case, Plaintiff contends that it was deprived of a property interest without due process. However, based on the plain reading of R.I.G.L. § 45-24-54, § 410-93 of the Zoning Ordinance and the *Tompkins* case – which was issued before the actions of the Defendants – it can hardly be argued that it was clearly established that Plaintiff had a property interest in the Zoning Certificates. In fact, the opposite is true. Even if Plaintiff had a property interest, it was certainly not clearly established that Plaintiff was entitled to a pre-deprivation hearing and/or that the post-deprivation remedies were inadequate. Once again, the opposite is true as these procedures constitute the norm in these instances. Therefore, Defendants are entitled to qualified immunity on Plaintiff's procedural due process claim.

For all these reasons, the inability to establish a property interest, the constitutionally adequate post-deprivation remedies afforded Plaintiff and Defendants' entitlement to qualified immunity, Defendants respectfully submit that they are entitled to summary judgment in their favor on Count I of Plaintiff's Complaint.

### ***C. Defendants are entitled to Summary Judgment on Plaintiff's § 1983 Substantive Due Process Claim because Plaintiff does not have a Property Interest and Defendants' Conduct was not Egregiously Unacceptable, Outrageous, or Conscious-Shocking.***

Plaintiff's substantive due process claim flows from the same decisions of the City Planning Director and the Zoning Board regarding the need for a use variance despite the presence of the Zoning Certificates. Once again, the first hurdle Plaintiff must overcome is the establishment of a property interest as defined by state law. *See Macone*

*v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002) ("To establish a due process claim, substantive or procedural, appellants must first establish a property interest.")* Defendants contend, for the reasons set forth *supra*, that Plaintiff cannot establish a property interest thereby condemning its substantive due process claim. Even if Plaintiff could overcome this hurdle, its substantive due process claim would still fail as the second hurdle is even higher than the first one.

"A viable substantive due process claim requires proof that the state action was 'in and of itself . . . egregiously unacceptable, outrageous, or conscious-shocking.'" *Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994) quoting Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).* Further, as the First Circuit has on many occasions stated

> [R]ejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interest.

*PFZ Properties, Inc., 928 F.2d at 31-32. (internal citations and quotations marks omitted).*

The standard necessary to establish abuse of government power is a high one. *Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F. 2d 32, 45 (1st Cir. 1992).* The reason for this high standard is the difficulty in deciding what abuses constitute abuses of substantive due process. *Id*. Therefore, the First Circuit has consistently held that, ordinarily, substantive due process claims may not be used to involve the federal court in local planning disputes. *Id*. Although not alleged by Plaintiff, even "even bad-

faith violations of state law are not necessarily tantamount to unconstitutional deprivations." Amsden, *904 F.2d at 757. See also,* PFZ Properties, *927 F.2d at 32 ("Even assuming that ARPE engaged in delaying tactics and refused to issue permits for the Vacia Talega project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution under a substantive due process label.")* The Court has, however, "left the door slightly ajar for federal relief in truly horrendous situations. *Id.*

There was nothing egregiously unacceptable, outrageous, or conscious-shocking about Defendants' actions in the instant case. Plaintiff can only show, at best, that the decisions made by Defendants were incorrect and in excess of their authority. In fact, these are the only allegations made by Plaintiff. *See* Plaintiff's Complaint, *paragraph 23 ("The July 12, 2004 determination of the Defendant Planning Director that the Division of Zoning and Code Enforcement was in error and his refusal to accept the Zoning Certificates was a usurpation of the legal authority of the Division of Zoning and Code Enforcement and was beyond his authority and ultra vires.")* However, decisions made for erroneous reasons, or made beyond authority, do not rise to the level of a constitutional violation. *See* Amsden, *904 F.2d at 757 ("Our cases make clear that a regulatory board does not transgress constitutional due process requirements merely by making decisions for erroneous reasons or by making demands which arguably exceed its authority under the relevant state statutes.") (internal quotations and citation omitted).*

In *Creative Environments, Inc. v. Estabrook*, *680 F2d 822 (1st Cir. 1982)*, the defendant town disapproved a housing development plan proposed by the plaintiff developer. A lawsuit followed wherein Plaintiff alleged, among other things, *§ 1983* due

process violations. The court stated that it would assume that the plaintiff developer could have established at trial that the town used adversarial and even arbitrary tactics to deny the development plan. However, the court noted that plaintiff's claim was too typical of the run of the mill dispute between a developer and a town planning agency to rise to the level of a due process violation. *Id. at 833*. As the court stated, a "conventional planning dispute – at least when not tainted with fundamental procedural irregularity, racial animus, or the like – which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even where planning officials clearly violate, much less "distort" the state scheme under which they operate." *Id*.

The allegations in the instant case involve a typical run of the mill dispute between a developer and a town planning agency. The Defendants actions were not egregiously unacceptable, outrageous, or conscious-shocking. In fact, they do not even rise to the level of the allegations in the *Creative Environment* case. For all these reasons, including the lack of a property interest and qualified immunity, Defendants respectfully request that this Court enter summary judgment in their behalf on the substantive due process claim contained in Count II of Plaintiff's Complaint.

### ***D. Defendants are entitled to Summary Judgment on Plaintiff's Equitable Estoppel/Detrimental Reliance Claim because the Zoning Certificates were not Enforceable, were not Issued by a Duly Authorized City Official and Plaintiff Could Not Justifiably Rely on Them.***

Counts III and IV of Plaintiff's Complaint allege equitable estoppel/detrimental reliance claims against the Defendants. The claims are based on the Zoning Certificates issued by Todd Olbrych, a Pawtucket Building Official. Plaintiff seeks injunctive and

declaratory relief as well as monetary damages. One aspect of the injunctive relief sought by Plaintiff is a restraining order enjoining Defendants from interfering with Plaintiff's lawful use of the Parcel "and from interfering with the rights assured to Plaintiff by the Defendant Zoning ***Director***." *Plaintiff's Complaint, paragraph 37(1). (emphasis added).*

"[E]quitable estoppel is 'extraordinary' relief, which 'will not be applied unless the equities clearly [are] balanced in favor of the party seeking relief.'" *Southex Exhibitions, Inc. v. R.I. Builders Ass'n, 279 F.3d 94, 104 (1st Cir. 2002) quoting Greenwich Bay Yacht Basin Assocs. v. Brown, 537 A.2d 988, 991 (R.I. 1988).* The elements necessary to prove equitable estoppel are (1) an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed (in this case, Defendants) which is directed to another (here, Plaintiff) for the purpose of inducing the other to act or fail to act in reliance thereon, and (2) that such representation and conduct in fact did induce the other to act or fail to act to his injury. *Id. quoting Providence Teachers Union v. Providence Sch. Bd., 689 A.2d 388, 391-92 (R.I. 1997).* The burden for proving equitable estoppel is on Plaintiff. *Id.* "[T]he key element of an estoppel is intentionally induced prejudicial reliance." *El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1234 (R.I. 2000) quoting East Greenwich Yacht Club v. Coastal Resources Management Council, 376 A.2d 682, 686 (R.I. 1977).* As the *El Marcocco* court stated, "to establish that it was entitled to the benefits of the equitable estoppel doctrine, plaintiff had to show that one or more ***duly authorized representatives*** of the town affirmatively represented to it by word or deed that -- notwithstanding the town's future enactment of ordinances outlawing such conduct – it still would be allowed

to offer nude dancing at its liquor-serving establishment; that such representations were designed to induce plaintiffs reliance thereon; and that plaintiff actually and ***justifiably*** relied thereon to its detriment. *Id. (emphasis added)*.

In the instant case, the affirmative representation Plaintiff relies on is the issuance of the Zoning Certificates by Todd Olbrych, a former building official for the City of Pawtucket. Plaintiff alleges that "Todd Olbrych had actual and apparent authority to issue the Zoning Certificates for the City of Pawtucket." *Plaintiff's Complaint, paragraph 16*. However, the plain language of the Pawtucket Zoning Ordinance clearly indicates that Mr. Olbrych had no such authority and Rhode Island case law clearly states that apparent authority is not enough to bind the City.

Section 410-93 of the Pawtucket Zoning Ordinance entitled "Enforcement duties of Director" states, in pertinent part, that "[i]n order to provide guidance or clarification, ***the Director*** shall, upon written request, issue a zoning certificate or provide information to the requesting party within fifteen (15) days of the written request." "Zoning Certificate" is defined in the Ordinance as "[a] document ***signed by the Director***, as required in this chapter, which acknowledges that a use, structure, building, or lot either complies with or is legally nonconforming to the provisions of the municipal zoning ordinance or is an authorized variance or modification therefrom." *Section 410-132*. The "Director" is defined as the "Director of the Division of Zoning and Code Enforcement of the City of Pawtucket." *Id*.

Ronald F. Travers was Director of the Division of Zoning and Code Enforcement, not Todd Olbrych. Mr. Olbrych was a Building Official and he signed the Certificates as Building Official. *See Exhibits B and C attached hereto*. Under the plain language of the

Ordinance, he was not duly authorized to issue the Certificates. It is well-settled that "the authority of a public agent to bind a municipality must be actual * * *. Consequently, any representations made by such an agent lacking actual authority are not binding on the municipality * * *." *Casa DiMario, Inc. v. Richardson, 763 A.2d 607, 610 (R.I. 2000) (citations and internal quotations omitted).*

In *Casa DiMario*, plaintiff filed a lawsuit against the Town of Johnston over the validity of an anti-nudity ordinance. During the course of that lawsuit, the Johnston town solicitor entered into a consent order with plaintiffs that purported to settle the case. However, the town council never authorized him to settle the lawsuit according to the terms of the consent order. The court ruled that it was clear that the solicitor lacked actual or apparent authority to settle the case. *Id. at 610*. Plaintiff, however, argued that the town should still be bound because of the town's alleged past practice of allowing the solicitor to settle certain cases without a formal prior vote of the town council. This argument was rejected by the court as misplaced and unjustified. *Id. at 611*. The court noted that courts were reluctant to order estoppel against the government based on the action of one of its officers. *Id. at 612*. For this reason, any party dealing with a municipality is bound, at his or her own peril, to know the extent of the officer's capacity. *Id*. As the court stated, any putative detrimental reliance by plaintiff based on the town's alleged past practice of settling lawsuits without council approval would not have been justified. *Id*.

In the instant case, any putative detrimental reliance by Plaintiff on the Zoning Certificates was not justified. The Ordinance is clear that the Zoning Certificates must be signed by the Director of the Department of Zoning and Code Enforcement. It is also

clear that Todd Olbrych was not the Director and did not sign the Zoning Certificates in that capacity. Plaintiff's alleged reliance on Mr. Olbrych's apparent authority to issue the Zoning Certificates is no different than the *Casa DiMario* plaintiff's alleged reliance on the apparent authority of the town solicitor to settle lawsuits.

Similarly, in *Caron v. Town of North Smithfield, 885 A.2d 1163, 1164 (R.I. 2005)*, the Town of North Smithfield sold a parcel of land to a non-profit group. The purpose of the sale was to allow this non-profit group to build low and moderate income housing on the parcel. Plaintiffs owned property adjacent to this town property and became concerned when they saw wells being sited next to their boundary line. They were concerned that they would not be able to improve or enlarge their own septic system because of its proximity to these proposed new wells. Plaintiffs alleged that they were told by various town officials, including the town administrator, that the town would cancel the contract with the non-profit group if plaintiffs' concerns could not be rectified. Plaintiffs' concerns were not rectified and the wells were drilled anyway. Plaintiffs filed suit requesting, among other things, estoppel against the town because they detrimentally relied on the town's assurances that the wells would not be located in an area that would have an adverse impact on their property.

The court began its analysis by citing the well-settled rule that the authority of a public agent to bind a municipality must be actual and any representations made by a public agent lacking actual authority were not binding on a municipality. *Id at 1164*. The town administrator, upon whom plaintiffs relied for their detrimental reliance claim, had no actual authority to bind the town or cancel the contract with the non-profit group. Therefore, "[a]lthough the Carons may have believed that Bianchi had this power or

influence, their failure to discover the true scope of his authority does not provide grounds for relief on the basis of detrimental reliance." *Id. at 1165*. In *Potter v. Crawford, 797 A.2d 489 (R.I. 2002)*, the court rejected the plaintiff's assertion that a municipality may be bound by the actions of a public agent who only possesses apparent authority. The court found that "the fact that the plaintiff merely assumed that Armington [the municipal official] possessed such authority will not provide him with any grounds for relief under an estoppel theory against the town." *Id at 493*.

The detrimental reliance espoused by the plaintiffs in the above cases is no different than the alleged detrimental reliance claimed by Plaintiff in the instant case. Mr. Olbrych had no actual and/or apparent authority to issue the Zoning Certificates and Plaintiff could not justifiably rely on them. Plaintiff cannot establish this element of equitable estoppel/detrimental reliance.

Even assuming Plaintiff could overcome this hurdle, i.e., that Olbyrch was a duly authorized representative, Plaintiff could not *justifiably* rely on the Zoning Certificates in expending "substantial sums of money" as a matter of law. First, as Defendants have argued *supra*, the Zoning Certificates were not enforceable against the City. At best, they provided informational assistance only. Second, the Zoning Certificates did not guarantee that Plaintiff would gain acceptance of its project. Even if the Zoning Certificates were enforceable, Plaintiff was still required to file its Site Plan Application and proceed through the city planning process. Even approval from the City Planning Commission did not guarantee approval of the project because Plaintiff needed the approval of non-municipal agencies, such as RIDEM. As Exhibit D shows, RIDEM

approval was far from guaranteed. So, for Plaintiff to expend substantial sums of money on the Zoning Certificates was not justifiable as a matter of law.

Defendants submit that summary judgment should enter in their favor on Counts III and IV of Plaintiff's Complaint because Todd Olbrych did not have actual or apparent authority to issue the Zoning Certificates. Furthermore, Plaintiff was not justified in relying on the Zoning Certificates as they were for informational purposes only and the Zoning Certificates did not guarantee Plaintiff approval of its project.

***E. Defendants are entitled to Summary Judgment on Plaintiff's Intentional Interference with Contractual Relations and Interference with Prospective Economic Advantage Claims as Plaintiff Cannot Establish the Elements of Either Claim.***

Plaintiff contends, in Count V of its Complaint, that the Defendants intentionally interfered with its contractual relations. Count VI contains the analogous claim of interference with prospective economic advantage. To establish a prima facie case of intentional interference with contract, under Rhode Island law, Plaintiff must prove (1) the existence of a contract, (2) Defendants knowledge of that contract, (3) Defendants intentional interference with that contract, and (4) damages resulting from the intentional interference. Further, as Plaintiff has alleged intentional interference, it must show legal malice, i.e., an intent to do harm without justification. *Belliveau Building Corporation v. O'Coin*, *763 A2d. 622, 627 (R.I. 2000).* The elements Plaintiff must prove to establish interference with prospective contractual relations are (1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained and (5) damages to the plaintiff. *Mesolella v. City of Providence*, *508*

*A.2d 661, 669 (R.I. 1986).* Plaintiff cannot satisfy any of the elements necessary to prove either claim.

Initially, it is easy to doubt Plaintiff's interference claims. The elements require Plaintiff to prove the existence of a contract or business relationship, knowledge of either by Defendants, and Defendants intentional interference with malice. These allegations are easier to make than to prove, and it is Plaintiff's burden to prove them. *Belliveau Building Corporation*, *763 A2d. at 627*. Plaintiff does not identify the contracts or business relationships allegedly interfered with by Defendants, how Defendants became aware of them and/or how Defendants intentionally interfered with them with malice. Without proof of these elements, Plaintiff's intentional interference claims must fail.

It would be highly unusual and unreasonable for Plaintiff to have entered into any contracts (or, for that matter, for any of the Defendants to be aware of them) because Plaintiff had simply filed its initial application, the first step in the process to gain approval for its project. As noted *supra*, the approval process went beyond City of Pawtucket approval. Plaintiff also needed approval from the RIDEM and Plaintiff had filed only the initial pre-application. The response from RIDEM was less than positive as Plaintiff was notified of numerous deficiencies and that the failure to address them would result in denial of its license application. *See Exhibit D attached hereto.* To the best of Defendants' knowledge, Plaintiff has not addressed these deficiencies with RIDEM. Therefore, unless and until Plaintiff can identify the contracts or business relationships allegedly interfered with, and Defendants knowledge of them, Plaintiff's intentional interference claims must fail.

Further, the comments from RIDEM to Plaintiff's pre-application resulted in Plaintiff changing its Site Plan Application. The March 30, 2004 Site Plan Application changed the proposed use from "Railroad Shipping Operations/Transfer Station For Refuse" to "Railroad Terminal and Construction & Demolition Debris Transfer Station." See *Exhibits A and E attached hereto*. This change in use is not insubstantial because it *differs* from the use contained in the Zoning Certificate upon which Plaintiff relies for its claim. *See attached Exhibit A*. Evidently, Plaintiff's business plans changed as it proceeded through the RIDEM application process. Left unsaid is how Defendants were aware of these changed business plans and/or contracts related to the change.

Plaintiff must realize the difficulty of relying on the Zoning Certificate because, in paragraph 48 of its Complaint, it states that

> Plaintiff intended to develop the Subject Property consistent with the plans and specifications submitted to the Defendant Planning Director and had taken substantial steps toward development.

To repeat what has been stated earlier, on its face, it is not conceivable that Plaintiff would take substantial steps toward development when it had filed only the first document in the development process. Furthermore, this statement indicates that the interference occurred *after* the plans were submitted to Mr. Cassidy. While Plaintiff first filed its Site Plan Application on or about August 1, 2003, it was incomplete and required more information for proper review by the City Planning Commission. Plaintiff took almost six (6) months to provide most of this necessary information and provided the last piece of information on April 28, 2004. The following day, Defendant Cassidy notified Plaintiff that the Department questioned whether a refuse transfer station was a permitted use, believed the Zoning Certificate was issued in error and had requested a legal opinion

from the Law Department. It is unlikely that Plaintiff would have entered into any contracts with third parties during this 24-hour period and that Mr. Cassidy would have been aware of them. It is also highly unlikely that Plaintiff would have entered into any contracts with third parties after receiving the April 29, 2004 letter because it was then on notice of potential difficulties with its application. Furthermore, an administrative officer or board should not be subject to a potential lawsuit, no matter how frivolous, simply because an applicant elects to enter into contracts while an application is being considered for approval.

There are no facts to support Plaintiff's claim that it had a contract or business plan, that Defendants knew about them, and then intentionally interfered with them with malice. Defendants respectfully request that this Court enter summary judgment in their favor on Counts V (interference with contractual relations) and Count VI (interference with prospective economic advantage) of Plaintiff's Complaint.

***F. Conclusion***

For the reasons cited herein, as well as those that may be raised at hearing, Defendants respectfully request that summary judgment enter in their favor on all Counts of Plaintiff's Complaint.

Defendants,
By their attorneys,

/s/ Marc DeSisto
/s/ Michael A. DeSisto
Marc DeSisto, Esq. (#2757)
Michael A. DeSisto, Esq. (#2444)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com
michael@desistolaw.com

CERTIFICATION OF SERVICE

This document has been filed electronically and is available for viewing and downloading from the ECF system. I hereby further certify that a true copy of the within Memorandum was mailed, postage prepaid, on this 9th day of August, 2006 to:

John B. Harwood, Esq. (#2093)
Michael E. Sendley, Esq. (#5591)
McKINNON & HARWOOD
1168 Newport Avenue
Pawtucket, RI 02861

/s/ Michael A. DeSisto