UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PAWTUCKET TRANSFER OPERATIONS, LLC | ) | |
| vs. | ) | C.A. No. 05-520 S |
| | ) | |
| CITY OF PAWTUCKET, *et al.* | ) | |

**PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS UNDER LOCAL RULE 12.1**

Plaintiff submits under Local Rule 12.1(a)(1) that there is no genuine dispute concerning the following facts material to Counts III to VI of the Complaint, which allege equitable estoppel, detrimental reliance, tortious interference with contractual relations and tortious interference with economic advantage:

1. On or about September 24, 2002, a Certificate of Zoning Compliance was issued to Pawtucket Railway Hauling LLC, stating that use of property at 280 Pine Street, Pawtucket, RI as a refuse transfer station conforms to the Pawtucket zoning ordinances.
2. Pawtucket Railway Hauling LLC is plaintiff Pawtucket Transfer Operations LLC's ("PTO") predecessor in interest.
3. This Certificate was signed by Todd Olbrych, Building Official.
4. Mr. Olbrych had actual express authority to sign this Certificate of Zoning Compliance, given to him by Ronald F. Travers, Director of the Department of Zoning and Enforcement.
5. On or about February 27, 2003, a Certificate of Zoning Compliance was issued to plaintiff PTO, again stating that use of property at 280 Pine Street, Pawtucket, RI as a refuse transfer station conforms to the Pawtucket zoning ordinances.

6. This Certificate of Zoning Compliance was also signed by Todd Olbrych, Building Official.

7. Mr. Olbrych had actual express authority to sign this Certificate of Zoning Compliance, given to him by Ronald F. Travers, Director of the Department of Zoning and Enforcement.

8. In good faith reliance on these Certificates of Zoning Compliance, PTO negotiated and entered into rental and option agreements, made site improvements and otherwise incurred substantial expenses in order to develop this site as a refuse transfer station.

9. PTO and Pawtucket and Worcester Railroad Company negotiated an agreement pursuant to which PTO paid tens of thousands of dollars to P & W RR on an option to buy the property at 280 Pine Street, Pawtucket, which ultimately evolved into a lease for twenty (20) years in order to operate a refuse transfer station, in exchange for a payment of $4136 per month plus Pawtucket property taxes. PTO also entered a rental agreement with Infinity Rail to lease one hundred (100) rail cars for eleven (11) years at $249 per car per month for the first year and $425 per car per month for the next ten (10) years. PTO began paying P & W RR in March 2003 on the option to buy and then began formal lease payments to P & W RR on or about September 2004. PTO began paying Infinity on or about on its lease in approximately February 2005.

10. PTO also incurred legal, engineering and survey expenses in order to develop the site as a refuse transfer station.

11. PTO expected to field one thousand (1000) tons of construction debris from up to as many as hundred (100) trucks per day, and entered into lease agreements to permit it to do so in reliance on the Certificate of Zoning Compliance.

12. On or about July 31, 2003, PTO filed a Site Plan Request Form with the Pawtucket Planning Commission, seeking approval for the proposed use of this site as a refuse transfer station and attached a copy of the Certificate of Zoning Compliance.

13. PTO also applied to the Rhode Island Department of Environmental Management (DEM) for a license to conduct a "Construction and Demolition Debris Processing Facility," which under DEM regulations was considered a "Solid Waste Transfer Station."

14. Because of the difference in terminology between the DEM regulations and the Pawtucket ordinances, PTO filed second Site Plan Request Form with the Pawtucket Planning Commission on or about March 30, 2004. This Form described PTO's business using the phrase "construction and debris transfer station" instead of "refuse transfer station," but was not intended to change PTO's proposed operations.

15. The Director of Planning and Redevelopment, Michael D. Cassidy, asked for more information, including evidence of PTO's lease of the site in question.

16. PTO provided the requested information on or about April 28, 2004, including a letter from the general counsel to Pawtucket and Worcester Railroad Company, stating that the Railroad had agreed to lease 280 Pine Street to PTO pending execution of a lease agreement.

17. On or about July 12, 2004, Mr. Cassidy sent PTO a letter, stating that PTO's site plan review application was "deemed incomplete" both because the Certificate of Zoning Compliance incorrectly identified a private refuse transfer station as an approved use in a Manufacturing Open zone when only public refuse transfer stations are allowed, and because a "construction and demolition debris" processing facility is not allowed in any Pawtucket zone. He asserted that therefore PTO was not entitled to a hearing.

18. As a result of this decision, PTO could not continue to pursue the DEM application, nor could it continue to develop its business plans, make improvements to the site or otherwise proceed with its business.

19. Defendants knew that defendant Cassidy's decision not to honor the Certificate of Zoning Compliance would interfere with PTO's business development and with contracts it had already entered in reliance on the Certificate of Zoning Compliance.

20. PTO appealed to the Zoning Board of Review, arguing that both public and private refuse transfer stations are approved uses in a Manufacturing Open zone, and that the ordinance is not ambiguous on this point.

21. The Zoning Board of Review held a public hearing on PTO's appeal on or about September 28, 2004 at which PTO manager Daniel Poggi described to the Zoning Board of Review the nature of the operations PTO was planning.

22. The Zoning Board of Review denied PTO's appeal on or about December 28, 2004.

23. PTO appealed this decision to the Rhode Island Superior Court, which reversed, holding that the City's actions were arbitrary and capricious and its interpretation of local law unjustified.

24. Defendants' refusal to honor PTO's Certificate of Zoning Compliance caused a two year delay in PTO's efforts to develop its refuse transport business, resulting in a loss of anticipated profits of at least $2,392,288.

25. Defendants' refusal to honor PTO's Certificate of Zoning Compliance caused PTO to be unable to carry out contracts entered in reliance on the Certificate of Zoning Compliance, and made those contracts less valuable and more costly, causing damages of at least $ 1,073,691.

Respectfully submitted,
Pawtucket Transfer Operations LLC
By its Attorneys,
McKinnon & Harwood

/s/ John B. Harwood
/s/ Michael E. Sendley
John B. Harwood (#2093)
Michael E. Sendley (#5591)
1168 Newport Avenue
Pawtucket, RI 02871
(401) 723-9655
(401) 722-9106 (facsimile)

**CERTIFICATION**

I hereby certify that on Wednesday, November 15, 2006, a true copy of the within, was served upon the following and in the following manner(s):

Marc DeSisto, Esq., Michael A. DeSisto, Esq., DeSisto Law by electronic means to "marc@desistolaw.com" and Michael@desistolaw.com through the ECF system.

/s/ Michael E. Sendley
Michael E. Sendley