UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PAWTUCKET TRANSFER OPERATIONS, LLC | ) | |
| | ) | |
| vs. | ) | C.A. No. 05-520 S |
| | ) | |
| CITY OF PAWTUCKET, *et al.* | ) | |

**AFFIDAVIT OF DANIEL J. POGGI, JR.**

I, Daniel J. Poggi, Jr., being duly sworn, depose and say:

1. I have personal knowledge of the information contained in this affidavit.
2. I am the manager of Pawtucket Transfer Operations, LLC ("PTO"), a limited liability company with a business address at 280 Pine Street, Pawtucket, RI.
3. On or about September, 2002, I applied for a Certificate of Zoning Compliance in the name of PTO's predecessor in interest, Pawtucket Railway Hauling, LLC, seeking to change the use of property at 280 Pine Street, Pawtucket, RI to a refuse transfer station. I was not seeking information about a current use of this property, but was rather seeking permission to change the use of the site from an inactive railroad yard to a refuse transfer station, which would accept construction debris, compact it and place it in railroad cares for transportation out of state.
4. On or about September 24, 2002, this application was granted and a Certificate of Zoning Compliance was issued stating that use of this property as a refuse transfer station conforms to the Pawtucket zoning ordinances. A copy of this Certificate of Zoning Compliance is appeudcd hereto as *Exhibit (Ex.) A*.
5. In February, 2003, I applied for the same Certificate of Zoning Compliance for the same proposed change in use, this time in the name of PTO. On or about February 27, 2003,

this Certificate of Zoning Compliance was also granted. A copy of this Certificate of Zoning Compliance is appended hereto as *Ex. B.*

6. This Certificate of Zoning Compliance was signed by Todd Olbrych, Building Official. When I arrived at the office to pick up this Certificate of Zoning Compliance, both the Director of Zoning Ronald Travers and Todd Olbrych were present. I heard Mr. Olbrych ask Ronald F. Travers, the Director of the Pawtucket Division of Zoning Code and Enforcement, whom he wanted to sign the Certificate and Mr. Travers replied, "You do it."

7. In good faith reliance on these Certificates of Zoning Compliance, PTO and Pawtucket and Worcester Railroad Company negotiated an agreement pursuant to which PTO paid tens of thousands of dollars to P & W RR on an option to buy the property at 280 Pine Street, Pawtucket, which ultimately evolved into a lease for twenty (20) years in order to operate a refuse transfer station, in exchange for a payment of $4136 per month plus Pawtucket property taxes. PTO also entered a rental agreement with Infinity Rail to lease one hundred (100) rail cars for eleven (11) years at $249 per car per month for the first year and $425 per car per month for the next ten (10) years. PTO began paying P & W RR in March 2003 on the option to buy and then began formal lease payments to P & W RR on or about September 2004. PTO began paying Infinity on or about on its lease in approximately February 2005.

8. On or about July 31, 2003, I filled out a Site Plan Request Form and submitted it to the Pawtucket Planning Commission, seekiug approval for the proposed use of this site as a refuse transfer statiou. A copy of this form is attached as *Ex. C.*

9. I attached a copy of the Certificate of Zoning Compliance to this Form.

10. I also applied on PTO's behalf to the Rhode Island Department of Environmental Management (DEM) for a license to conduct a "Construction and Demolition Debris Processing Facility," which under DEM regulations was considered a "Solid Waste Transfer Station." I used this terminology to describe PTO's proposed operations because these were the terms used under DEM regulations. On or about February 27, 2004, DEM responded, citing a number of deficiencies in PTO's application.

11. Because of the difference in terminology between the DEM regulations and the Pawtucket ordinances, I filed a second Site Plan Request Form with the Pawtucket Planning Commission on or about March 30, 2004. This Form described PTO's business using the phrase "construction and debris transfer station" instead of "refuse transfer station." I did not intend by this Form, or the slightly different terminology, to change PTO's proposed operations in any way. A copy of this form is attached as *Ex. D.*

12. The Director of Planning and Redevelopment, Michael D. Cassidy, asked for more information, including evidence of PTO's lease of the site in question. I provided the requested information on or about April 28, 2004, including a letter from the general counsel to Pawtucket and Worcester Railroad Company, stating that the Railroad had agreed to lease 280 Pine Street to PTO pending execution of a lease agreement.

13. On or about April 29, 2004, I received a letter from Mr. Cassidy stating that he believed that the Certificate of Zoning Compliance was issued to PTO in error. A copy of this letter is attached as *Ex. E.*

14. On or about July 12, 2004, I received a second letter from Mr. Cassidy, stating that PTO's site plan review application was "deemed incomplete" because the Certificate of Zoning Compliance did not correctly identify a *private* refuse transfer station as an

approved use in a Manufacturing Open zone, on a *public* one. He also stated that PTO was therefore not entitled to a hearing. A copy of this letter is attached as *Ex. F.*

15. As a result of this decision, PTO could not continue to pursue the DEM application, nor could it continue to develop its business plans, make improvements to the site or otherwise proceed with its business.

16. PTO appealed to the Zoning Board of Review, arguing that both public and private refuse transfer stations are approved uses in a Manufacturing Open zone, and that the ordinance is not ambiguous on this point.

17. The Zoning Board of Review held a public hearing on PTO's appeal on or about September 28, 2004. A large number of people attended who opposed PTO's use of this land for a refuse transfer station.

18. The City Council passed a unanimous resolution expressing their opposition to permitting PTO to operate a refuse transfer station at 280 Pine Street. A copy of this resolution is attached *Exhibit G* at p. 3.

19. The Zoning Board of Review denied PTO's appeal on or about December 28. A copy of the Board's decision is attached as *Ex. H.*

20. PTO appealed this decision to the Rhode Island Superior Court, which reversed, calling the City's actions arbitrary and capricious. A copy of the court's decision is attached as *Ex. I.*

21. City agents did not identify any legitimate reason for thwarting PTO after giving PTO the Certificate of Zoning Compliance, other than political animus. The only stated reasons were unrelated to legitimate concerns, *i.e.,* a frivolous claim that local law permitted Cassidy to declare PTO's application incomplete because private refuse transfer station is

not allowed in a Manufacturing Open zone; that a construction and demolition transfer station is not allowed anywhere in the City; and that Todd Olbrych lacked authority to sign the Certificate of Zoning Compliance that PTO was given. The Board did not even bother to ask Todd Olbrych about his authority at the hearing.

22. The two year delay caused by the City's refusal to honor PTO's Certificate of Zoning Compliance was very costly. PTO anticipated transporting one thousand (1000) tons a day of construction debris from as many as one hundred (100) trucks. The dollar damages to PTO include, but are not limited to, those items listed in the *Affidavit of Marlene Wheaton.*

Daniel J. Poggi, Jr.

State of Rhode Island
Providence , Sc.

Subscribed and sworn to before me this 13th day of November , 2006.

Kim Benyon
Notary Public

CERTIFICATE OF SERVICE

I certify that on the _____ day of _______________, 2006, I caused a copy of this document to be mailed / hand-delivered to Marc DeSisto, Esq., Michael A. DeSisto, Esq., DeSisto Law, 211 Angell Street, P.O. Box 2563, Providence, RI 02906-2563.

______________________________