Bk L2267 Pg 68 #71
12-28-2004 11:26a

# City of Pawtucket

## Zoning Board of Review

**DECISION 04-61**

At the meeting of the Pawtucket Zoning Board of Review held on Tuesday, November 9, 2004, the following Decision was rendered:

WHEREAS, Pawtucket Transfer Operations, LLC, appellant, and Providence & Worcester Railroad, owner of property located at 280 Pine Street, Pawtucket, RI, further identified as Tax Assessor's Plat 44, Lot 559, located in a manufacturing open (MO) zoning district, appealed the decision of the City Planning Commission regarding a proposed transfer station/railroad under Section 410-12.5(I), and Section 410-12.18(B) respectively.

WHEREAS, the members of the Zoning Board of Review made an inspection of the above-described premises and the surrounding properties in the neighborhood; and

WHEREAS, in accordance with the State Open Meetings Act, a public hearing was held on this application by the Zoning Board of Review at its meeting held on Tuesday, September 28, 2004, after public notice was provided pursuant to § 410-112 of the Pawtucket Zoning Ordinance.

Attorney Michael Sendley, 1168 Newport Avenue, Pawtucket, RI represented the appellant at the hearing. Mr. Sendley stated that this appeal would show that the uses proposed for the property by the appellant are permitted under the zoning ordinances and that the Certificate of zoning compliance permit, previously issued by the Division of Zoning and Code Enforcement, should not have been "revoked" by the Director of the Department of Planning and Redevelopment.

Daniel Poggi, 116 Cottage Street, New Bedford, MA testified in his capacity as one of the principals of Pawtucket Transfer Operations, LLC (hereinafter "PTO"). The witness stated that the property in question is located at 280 Pine Street. He stated that his company became interested in the property two years ago, and that PTO has entered into a lease agreement with Providence and Worcester Railroad, the owner of the property. He stated that in September of 2002, he received a Certificate of zoning compliance concerning the property (Appellant's Exhibit 1). He stated that in February of 2003, PTO submitted a request for, and ultimately received, a Certificate of zoning compliance concerning the property (Appellant's Exhibit 2).

CITY OF PAWTUCKET

Mr. Poggi stated that although the zoning certificate, which was granted to PTO, references a proposed use of a "refuse transfer station", he claimed that there is no specific item listed within the City's Manufacturing Open zone classifications for the specific proposed use of the property (i.e., construction and demolition debris transportation). Mr. Poggi stated that the term "refuse" is a generic term and that the construction and demolition debris which PTO is seeking to transport would include only lumber, wood products, masonry, metals, and paper. He

stated there would be no transporting of household trash, with the associated problems of infestation. Mr. Poggi stated that the construction and demolition debris operation would take place fully inside of a building located on the property. He stated that the operation is such that a truck completely enters the building and delivers the debris.

Mr. Poggi further stated that after receiving the zoning certificates, PTO began making arrangements with the railroad; started their acquisitions for the site; and expended a lot of money in reliance on the Certificate. He also stated that on July 12, 2003, after meeting with the City's Planning Commission, PTO received a letter stating that his zoning certificate was being "revoked" (Appellant's Exhibit 3). The Board questioned whether Providence and Worcester Railroad approves of the proposed operation. In response, Mr. Sendley submitted a letter dated July 2, 2004 concerning the proposed use (Appellant's Exhibit 4). The Board asked if PTO is a private or public corporation. Mr. Sendley stated that this entity is a Limited Liability Company.

Michael F. Horan, Esq., 393 Armistice Boulevard, Pawtucket, RI represented various objectors. Mr. Horan was allowed to cross-examine the witness. Mr. Horan asked about the first zoning certificate, and Mr. Poggi stated that the first certificate of compliance was issued to Pawtucket Railroad Hauling, LLC, a different legal entity from Pawtucket Transfer Operations, LLC, and one in which Mr. Poggi was not a member. The second zoning certificate was obtained by PTO of which the witness is a named member. Mr. Poggi conceded that PTO has no other operations, but that one member (David Stoller) is associated with TransLoad America, which is located in Newark, New Jersey, and which has experience with refuse transfer stations.

Mr. Horan questioned Mr. Poggi about the purported lease agreement which PTO has with Providence & Worcester Railroad, and also about PTO's existing application before the Rhode Island Department of Environmental Management ("DEM"). Mr. Poggi stated that PTO is seeking State approval for a demolition/construction debris facility, not a solid waste transfer station. Mr. Horan showed Mr. Poggi the application for the instant appeal, and Mr. Poggi states that the proposed use of the property is a railroad transfer station. Mr. Horan also showed Mr. Poggi a copy of the DEM application, which calls for the transportation by rail of up to two tons of construction and demolition debris per day. Mr. Poggi stated that only construction and demolition debris will be transferred by rail, and that any other debris will be refused or removed from the premises.

Upon further questioning on cross examination, Mr. Poggi stated that most of the construction debris will come into Pawtucket from Massachusetts, and then will be shipped out-of-state. Mr. Poggi also stated that tractor-trailers with one hundred yard containers will be brought to the transfer station and each tractor-trailer can contain twenty tons, the legal limit Mr Poggi stated that he is hopeful that 100 (maybe more) twenty-ton tractor-trailers (perhaps smaller tractor trailers) will be coming to the site everyday. Mr Poggi stated that when a tractor-trailer comes onto the premises, it will enter an enclosed building and will then deposit the "C&D" debris. The debris will be compacted or cut and then reloaded into train cars. Any material that his business is not licensed to ship will be placed in covered bins and hauled away by a third party

that is licensed to transport that material. He stated that that the proposed hours of operation of the facility would be from 6:00 a.m. to 10:00 p.m. each Monday through Saturday.

Mr. Horan presented a document to Mr. Poggi which had been previously submitted by PTO to DEM (Remonstrants' Exhibit A). Mr. Horan read the document to the witness. Mr. Horan asked what materials would be shipped in fifty-five gallon drums. Mr. Poggi stated "cutting oil". Mr. Poggi stated that the rail service would not only be transporting "C&D" debris but would also be receiving items as well (e.g., anything from molasses to lumber). Upon being questioned by Mr. Horan, Mr. Poggi acknowledged that some of the transportation trailers are open with only a tarp covering them. Mr. Sendley objected to the introduction of Exhibit A because Mr. Poggi had not prepare the document.

David Stoller, 73 Mayhew Street, South Orange, NJ also testified in his capacity as one of the principals of Pawtucket Transfer Operations, LLC. He is also Chairman of TransLoad American, LLC of Newark, New Jersey. Mr. Stoller stated that his transportation team has over 30 years of experience in the railroad business. He stated that the business in Pawtucket would be run like his company in New Jersey. He stated that large trailers unload their containers inside a building, and then the material is loaded onto rail cars and moved out. He stated that they do not process or separate waste, rather, there are four stages of visual inspections before the containers are accepted for transporting on rails.

Mr. Stoller stated that he was not involved in preparing the lease with Providence & Worcester Railroad but that he has since met with its representatives. He stated that the location in question has been inactive for a long time. He also stated that PTO's business would be mainly trans loading, which means truck to rail and rail to truck. Mr. Stoller also stated that not only "C&D" debris will be transported, but other commodities as well, such as lumber, steel and scrap metal. Mr. Poggi stated that there is no recycling of materials on site.

Mr. Stoller further stated that the premises in question consists of eight acres, so trucks will not be queuing on the street. He stated that the trucks enter, are scaled, inspected and identified; if they are accepted, the commodities are unloaded, and prepared for shipping by rail. He also stated that even the trains are loaded and unloaded inside a building. He further stated that if materials are found that cannot be transported by their business, the materials would be enclosed in the building until a licensed transporter could remove them.

Finally, Mr. Stoller stated that after the zoning certificate was issued, PTO began improvements on the site and made commitments in anticipation of doing business at this site. Mr. Stoller reminded the Board that this is an eight-acre railroad site that has been unused for years, and he thinks this facility could be very useful and productive again and also a source of revenue for the City. He stated that anyone is welcomed to visit his New Jersey facility.

Mr. Horan was allowed to cross-examine the witness. Mr. Stoller stated that the New Jersey location is the only facility he owns, but he is involved with many other facilities. He stated that the New Jersey facility is within a commercial and residential area. He also stated that the

New Jersey facility takes in from six hundred to one thousand tons per day, and that the Rhode Island DEM application seeks permission for two thousand tons per day. However, he stated that two thousand tons would be the maximum allowed, and that it would be "rare" if that amount is moved daily. Mr. Stoller also mentioned that this location in Pawtucket is a large site, and that PTO will be transporting other commodities.

Mr. Horan inquired if most of the trucks hauling in debris and other materials will be coming from out-of-state. Mr. Stoller confirmed this. Mr. Stoller also stated that the City of Pawtucket will be the host city but there has been no negotiation for a host fee going to the City. Mr. Stoller stated that the New Jersey operation is single shift and employs 16 people, compared to a New York facility in which he is involved which employs 60 people. Upon further questioning, Mr. Stoller also stated he believes that the trucks coming into this site would be about eighty percent of the capacity which PTO is requesting permission for from the State.

Mr. Sendley made closing argument. In summary, he stated that the Board should look to the "plain language" of Sections 410-12.5(I) and 410-12.19(B) of the zoning ordinance and find that the proposed uses are permitted uses. The Board referenced the terms "public" and "semi-public" under which the uses of Section 410-12.5 are categorized. Mr. Sendley stated that these terms should not apply because he sees no difference between a public transfer station and a private transfer station within a Manufacturing Open zone. He also stated that a railroad is a permitted use at this location and that this appeal is for a railroad transfer station.

Mr. Horan requested that a legal opinion prepared by the City Solicitor's office at the request of the Director of Planning and Redevelopment be made part of the record. Mr. Horan then argued that the intent of the zoning ordinance was that a refuse transfer station must be either public or semi-public to be a permitted use in a Manufacturing Open zone. Mr. Horan requested that the Board uphold the Planning Director's decision and/or interpretation of Section 410-12.5(I) of the zoning ordinance.

Mr. Sendley stated that in reliance on the February 23, 2003 zoning certificate issued by the former Building Inspector, the appellants spent "millions of dollars" and expended many man-hours in preparing the site. The Board pointed out that, on its face, the February 23, 2003 zoning certificate actually cites Section 410-12.5(A) which refers to "a house of worship"

The City presented the direct testimony of Michael D. Cassidy, 82 Ames Street, Pawtucket, RI. Mr. Cassidy is the Director of the Department of Planning and Redevelopment ("Planning Director"). Mr. Cassidy stated that the application submitted by PTO to the Planning Commission was incomplete because the proposed use is not allowed under the City's zoning ordinance and, therefore, required a use variance. He stated that there is no specific category for a private construction and demolition transfer station in the City of Pawtucket's use code. He also stated that the zoning ordinance's table of uses would only allow a "public" or "semi-public" refuse transfer station.

Mr. Cassidy also stated that in its application to DEM, PTO indicated that it wants to operate a solid waste transfer station and a "C&D" debris transfer station. DEM sent a letter to PTO setting forth fifty-three (53) deficiencies in the application. The Board asked Mr. Cassidy if the City's Building Inspector had the authority to issue a zoning compliance certificate to PTO. Mr. Cassidy stated that he did not know.

In response to Mr. Cassidy's testimony, Mr. Sendley stated that under DEM regulations, solid waste material includes C&D materials. Also, Mr. Sendley stated that in a Manufacturing Open zone, freight and trucking is an allowed use. Mr. Sendley further stated that the deficiencies in the DEM application are based on classifications and not on the substance of the submission. Mr. Sendley stated that the zoning ordinance does not specify that a transfer station has to be public or semi-public in order to be a permitted use.

Objector: Nancy Whit, 121 Sherwood Street, Providence testified in opposition to PTO's proposed use. She appeared on behalf of the Pawtucket Citizens Development Corporation (PCDC). She submitted a letter and read it into the record. In summary, PCDC opposes the request because of the non-profit and development properties nearby in the Barton Street area. She argued that the quality of life of neighboring property owners would be jeopardized.

Objector: Beverly Laprade, 21 Dexter Street, Pawtucket also testified in opposition to PTO's proposed use. She referred to the radius map submitted by PTO and questioned why her neighborhood was not included.

Mr. Sendley stated that this hearing was an appeal of a decision rendered by the Planning Commission. He offered his opinion that the objectors should wait for the next matter (i.e., PTO's application for a Use Variance) and offer their testimony at that time.

Mr. Horan requested that the Board close the appeal hearing and consider the next application to be heard, concerning the use variance, so that these objectors could be heard. The appeal hearing was closed.

During the course of the public hearing, the Board took administrative notice of the findings and advisory opinion submitted by the Planning Commission. The opinion states that PTO did not actually appear before the Planning Commission because staff deemed the application incomplete. The letter being appealed was written and submitted by Michael D. Cassidy, Director of Planning and Redevelopment.

The Planning Commission regularly reviews land development proposals for parcels of land over 20,000 square feet as directed by section 410-15.1 of the City's Zoning Ordinance. As directed by 410-15.1(C) of the ordinance, a public hearing will be scheduled within 30 days of receiving a complete application. This applicant was informed in writing several times (April 6, 2004, April 29, 2004, and July 12, 2004) that its application was not complete and outlined the materials needed for a complete application. In the most recent letter, dated July 12, 2004, the applicant was informed that a use variance from the Zoning Board for the proposed use would be

Bk L2267 Pg73 #71

necessary prior to the application being considered by the Planning Commission, because the proposed use, as stated on its DEM license application, proposed a "private" construction and demolition debris processing facility and solid waste transfer station, which is not a permitted use under the Zoning Ordinance.

NOW, THEREFORE, after consideration of the application and the testimony of the appellants, the objectors, the Planning Director, and the advisory opinion submitted by the Planning Commission, and after having carefully weighed the same, the Zoning Board of Review hereby makes the following findings:

This Board has jurisdiction to hear and decide this appeal pursuant to § 45-24-64 of the General Laws of the State of Rhode Island, which states that "[a]n appeal to the zoning board of review from a decision of any other zoning enforcement agency or officer may be taken by an aggrieved party." (See also Article XIV of the Pawtucket zoning ordinance.)

In addition, pursuant to § 45-24-68, in exercising its powers this Board may "reverse or affirm wholly or partly and may modify the order, requirement, decision, or determination appealed from and may make such orders, requirements, decisions, or determinations as ought to be made, and to that end shall have the powers of the officer from whom the appeal was taken."

Although the Notice of Appeal actually states that the appellant has taken an appeal of a decision rendered by the Planning Commission, the testimony and the record revealed that the matter was not in fact considered, either in whole or in part, by the Planning Commission, and no decision was rendered by the Planning Commission. Rather, it appears that the appeal finds its origin in a July 12, 2004 letter sent to the appellant by Michael D. Cassidy, the City's Director of Planning and Redevelopment.

In his July 12, 2004 letter, the Planning Director states he does not believe that PTO's proposed use of Providence and Worcester Railroad's property, as a private refuse transfer station, is a permitted use under the zoning ordinance. Therefore, the Board considers this matter an appeal of the Planning Director's July 12, 2004 letter. In the alternate, the appeal should be considered invalid since it does not concern a decision of any other zoning enforcement agency or officer. Furthermore, an appeal of a Planning Board decision to the Zoning Board of Review is not de novo in nature (See §§ 45-23-66, 45-23-67 and 45-23-70 of the General Laws). Rather, it is a review of the Planning Board record.

Assuming that the appeal is of the Planning Director's July 12, 2004 letter, the Board has to determine whether to reverse, affirm, or modify the determination of the Planning Director. In order to reverse the Planning Director's determination, the Board has to find that he acted in an arbitrary or capricious manner or was otherwise unreasonable in determining that the appellant's proposed use was not a permitted use under the Zoning Ordinance.

During the presentation of its case, the appellant entered into evidence a zoning compliance certificate issued on February 23, 2003 (See Appellant's Exhibit 2). The zoning

certificate was issued by Todd Olbrych, who was employed by the City as its Building Official. The face of the Certificate shows that Mr. Olbrych issued the zoning certificate in his capacity as Building Inspector. The Certificate references Section 410-12.5(A) of the zoning ordinance. A review of the zoning ordinance's table of uses reveals that Section 410-12.5(A) actually references a "house of worship". However, Mr. Olbrych also references the term "transfer station" on the face of the zoning certificate. Based on the testimony of the witnesses for the appellant, the Board finds that the reference on the Certificate to Section 410-12.5(A), as opposed to 410-12.5(I) was a scrivener's error on the part of Mr. Olbrych.

In its Notice of Appeal, the appellant cites Sections 410-12.5(I), and Section 410-12.18(B) of the zoning ordinance. Section 410-12.5(I) of the zoning ordinance refers to property used for a "refuse transfer station" and Section 410-12.18(B) of the zoning ordinance refers to property used as a "railroad". In terms of the Section 410-12.18(B) portion of the appeal, neither the testimonial evidence nor the documentary evidence submitted by the appellant demonstrates that it sought a zoning compliance certificate for a "railroad" use. Because the issue of whether the appellant's proposed use can be deemed a "railroad" use was not considered by any City official (i.e., the Planning Director, the Planning Commission, the Building Inspector or the Director of Zoning and Code Enforcement), the Board does not believe that the issue is ripe for review at this time.

The Board only has "the powers of the officer from whom an appeal is taken". The Board does not have the authority to issue declaratory judgments or to determine the propriety of specific uses in the first instance unless in the form of an application for a variance or special-use permit. (See generally <u>RICO Corp. v. Town of Exeter</u>, 787 A.2d 1136, 1144 (R.I. 2001) citing <u>Hassell v. Zoning Board of Review of East Providence</u>, 275 A.2d 646, 648 (R.I. 1971))

In terms of the Section 410-12.5(I) portion of the appeal, it is clear that a "Refuse Transfer Statiou" is not allowed as a permitted use in any zone except in a Manufacturing Open zone. It is undisputed that the Providence and Worcester Railroad property is located in a Manufacturing Open zone. It is also clear that the uses allowed under Section 410-12.5 of the zoning ordinance are within a category of uses entitled "Public, Semi Public, Public Education and Recreational Uses". The appellant argued that its proposed use is permitted under the zoning ordinance. However, the appellant also stated, through its witnesses, that the proposed use of the property was classified in its request as a "transfer refuse station" <u>only</u> because there was not a specific classification within the City's Manufacturing Open classifications for the type of use which they wish to employ (i.e., <u>construction and demolition debris transportation</u>). Further, upon being questioned by the Board, the appellant indicated that PTO is a private company and not a public company.

The Board finds that the Planning Director was not unreasonable in his determination that a "refuse transfer station" is not a public education or recreational use. Even the appellant did not attempt to suggest that the proposed use could qualify as either a public education or recreational use. Whether the proposed use can be deemed either a "public" or "semi-public" is more problematic for the reason that these terms are vague and are not defined in the zoning ordinance.

However, in the absence of a definition of these terms, the Board does not believe that it was unreasonable, capricious or arbitrary for the Planning Director to reach the conclusion that in order for a "refuse transfer station" to be allowed, it would have to be public or semi-public in nature or, rather, based on his testimony, one which is either wholly or in part operated or managed by the City.

Counsel for the appellant suggested at the hearing that the headings or titles of statutes or ordinances are not dispositive to their meaning. The Board is aware of this general proposition of statutory construction. However, the Board is also aware that "this rule is subject to the judicial gloss that where there is doubt as to the meaning of a provision in a statute, the title of the statute may be consulted as a guide". Pickering v. Pickering, 10 A.2d 721 (R.I. 1940). "Further, the title of an act or subpart thereof may be considered to aid construction, Armour & Co. v. New York, N.H. & H.R.R., 103 A. 1031 (R.I. 1918), but cannot control or vary the meaning of a statute where that statute is unambiguous". Blais v. Franklin, 77 A. 172 (R.I. 1910) (See also Orthopedic Specialists v. Great Atl. & Pac. Tea Co., 388 A.2d 352, 355 (R.I., 1978))

During his testimony, Mr. Cassidy stated that the application submitted by PTO to the Planning Commission was incomplete because the use proposed was not allowed under the City's Ordinances, and, therefore, would require a use variance. He also indicated that there was no category for a "construction and demolition transfer station" in the zoning ordinance's table of uses. Section 410-12(G) of the zoning ordinance states that uses which are not specifically listed in the table of uses are prohibited.

In addition, the witnesses for PTO did not offer any testimony in support of its position that a privately operated refuse transfer station is allowed in a Manufacturing Open zone as a permitted use. The appellant also did not assist the Board in offering its definition of either a "public" or a "semi-public" use. Although Counsel for PTO argued that there is no difference between a public transfer station and a private transfer station within a Manufacturing Open zone, his argument alone cannot rise to the level of competent testimony on this issue. (See Lincoln Bldg. Ass'n v. Zoning Bd. of City of Warwick, 252 A.2d 25, 26 (R.I. 1969)).

The Board takes administrative notice that the City of Pawtucket has traditionally either owned or managed incinerators or transfer stations located within its boundaries and located on property owned by the City. Since most of the particular uses allowed under Section 410-12.5, which cannot be deemed either educational or recreational uses, are uses which are municipal or governmental in nature, the Board believes that it was clearly the City Council's intent not to allow a "private" refuse station in this or any zone, in the absence of a use variance. Based upon the evidence presented, the Board finds that the applicant has not shown that the determination of the Planning Director was either unreasonable or arbitrary or an abuse of discretion, or was anything other than a correct determination. The Board further finds that under Section 410-12(G) of the zoning ordinance, the appellant's true intended use of the property as "construction and demolition transfer station" is not a use specifically listed in the table of uses, and therefore, would be a prohibited use.

In addition to the foregoing, the Board also considers the "authority" issue which was raised by the Board during the hearing concerning the propriety of the issuance of the zoning compliance certificates by the City's Building Official. Section 45-24-54 of the General Laws states that the "zoning enforcement officer" has the authority to issue zoning certificates. The City's zoning ordinance establishes that the City's zoning enforcement officer is the "Director of the Division of Zoning and Code Enforcement". On February 23, 2003, the date that the zoning certificate was issued to PTO, Ronald F. Travers was the Director of the Division of Zoning and Code Enforcement. Todd Olbrych was the Building Official. Mr. Olbrych signed the Certificate in his capacity as the Building Official. Under the plain language of the Ordinance, Mr. Olbrych lacked actual authority to issue the Certificate in question. The Board finds that any representations made by such an agent lacking actual authority are not binding on the City. (See School Committee of Providence v. Board of Regents for Education, 429 A.2d 1297, 1302 (R.I. 1981)).

The appellant also raised the issue of detrimental reliance during the presentation of its case. However, it appears from the case law that "[a]ny party dealing with a municipality is bound at his own peril to know the extent of its capacity. A person's failure to discover the true scope of a government agent's actual authority will not provide any ground to relieve the person's detrimental reliance upon the agent's representations or actions." (See Potter v. Crawford, 797 A.2d 489, 492-3 (R.I. 2002)). Further on the issue of detrimental reliance, the Board is mindful of recent decisions rendered by the Rhode Island Superior Court. (See Tompkins v. Zoning Board of Review of the Town of Little Compton, 2003 WL 2279082. Hurst, J. (R.I. Super.2003) and J.M.M., Jr. Enterprises, Inc. v. Cohen, 2002 WL 31455721, Gagnon J., (R.I. Super. 2002)).

In Tomkins, the Court held that "although a zoning certificate ... may assist in clarifying questions concerning the present status of a use, structure, building or lot and whether it complies with or is legal under the ordinance, the purpose of the certificate is plainly to provide no more than informational assistance alone. Such a certificate does not operate to vest any rights in the owner of the property in question or the individual who may be making the request for the certificate.

In Tomkins, the Court also held that "... neither a zoning official nor zoning board of review may lawfully issue a zoning certificate for the purpose of making a binding or enforceable determination about whether or not a proposed use, structure, building or lot would be legal under a municipal ordinance. Given the language of the pertinent sections of the Enabling Act, it is clear that the practice of attorneys and landowners to request a zoning certificate as a means of gaining binding or enforceable administrative approval is wholly unavailing and is particularly so with respect to proposed uses or development." Id. Therefore, "[w]here the use, structure, building or other development is proposed, as opposed to existing, it is only through the submission of proper applications for necessary permits that a party can gain an enforceable approval of proposed plans." Id.

Although the Board acknowledges that the issues of authority and detrimental reliance are not the main issues on appeal, they are essential issues raised during the hearing by the appellant's witnesses through their testimonial evidence and through the introduction of documentary evidence. It appears that the appellant acted at its own peril when it relied on a zoning certificate issued by an agent who lacked the actual authority to issue the same.

WHEREAS, upon consideration of the foregoing, it is bereby;

RESOLVED: That the Zoning Board of Review for the City of Pawtucket does hereby uphold the decision of the Planning Director, pursuant to applicable provisions of the Pawtucket Zoning Ordinances and the State Zoning Enabling Act, and does hereby deny the appeal of Pawtucket Transfer Operations, LLC and Providence & Worcester Railroad.

VOTE TO DENY APPEAL: Carvalho, Gannon, Ferland, Shabo, Assermely

Russell J. Ferland
Secretary, Zoning Board of Review

DATED: Tuesday, December 28, 2004