UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PAWTUCKET TRANSFER OPERATIONS, LLC,<br>*Plaintiff,*<br>vs.<br>CITY OF PAWTUCKET, et al.<br>*Defendants.* | C.A. No. 05-520 S |

**DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now come the Defendants, in the above-referenced matter, and hereby object to Plaintiff's motion for partial summary judgment and respond to Plaintiff's objection to Defendants' motion for summary judgment. In support thereof, Defendants rely on their Memorandum of Law filed contemporaneously herewith.

Defendants,
By their attorneys,

*/s/ Marc DeSisto*
*/s/ Michael A. DeSisto*

Marc DeSisto, Esq. (#2757)
Michael A. DeSisto, Esq. (#2444)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com
michael@desistolaw.com

C.A. No. 05-520 S

CERTIFICATION

I hereby certify that this document has been filed electronically with the Court and is available for viewing and downloading from the ECF system:

*/s/ Marc DeSisto*

Marc DeSisto

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PAWTUCKET TRANSFER OPERATIONS, LLC,<br>*Plaintiff,*<br><br>vs.<br><br>CITY OF PAWTUCKET, et al.,<br>*Defendants.* | C.A. No. 05-520 S |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND IN RESPONSE TO PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff has responded to Defendants' summary judgment motion by filing an objection and a cross-motion for partial summary judgment. Plaintiff's cross-motion seeks partial summary judgment on its state law claims of equitable estoppel/detrimental reliance and intentional interference with contractual and business relations. This memorandum is filed to respond to the arguments contained in Plaintiff's memorandum supporting its objection and motion for partial summary judgment.

## II. EQUITABLE ESTOPPEL/DETRIMENTAL RELIANCE

The key issue of this claim and the source of dispute between Plaintiff and Defendants, is whether Todd Olbrych, the former Pawtucket building official, had actual authority to issue the zoning certificate which serves as the affirmative representation relied upon by Plaintiff. The issue of who possesses actual authority is a question of law for the Court. In its memorandum,

Plaintiff concedes that the authority of a public agent to bind a municipality must be actual and any representations made by an agent lacking actual authority are not binding on the municipality. *Casa DiMario, Inc. v. Richardson, 763 A.2d 607, 610 (R.I. 2000).* Plaintiff argues that Mr. Olbrych had actual authority to bind the City because Ronald Travers, Director of Zoning and Code Enforcement for the City of Pawtucket, told him he could sign the zoning certificates. *Plaintiff's Memorandum, at 17*. Plaintiff also maintains that "defendants offer no evidence that Mr. Olbrych acted without authorization." *Id*. These arguments, however, demonstrate that Plaintiff misunderstands the meaning of the term "actual authority".

It is clear that Ronald Travers, as Director of Zoning and Code Enforcement, is the only individual who has actual authority to sign the zoning certificates because, as Defendants pointed out in their Memorandum of Law in Support of their Motion for Summary Judgment ("Defendants' Memorandum"), **the Pawtucket Zoning Ordinance duly authorizes the Director of Zoning and Code Enforcement to sign these certificates**. *See §§ 410-93, 96 and 132 of the Pawtucket Zoning Ordinance.* Conversely, Defendants' evidence that Mr. Olbrych acted without authorization is this same governing document of the City of Pawtucket. The Pawtucket Zoning Ordinance does not authorize anyone to sign these zoning certificates other than Director of Zoning and Code Enforcement. Mr. Olbrych was not the Director of Zoning and Code Enforcement. Therefore, he was not duly authorized to sign the zoning certificates.

Plaintiff argues that Mr. Olbrych had actual authority to sign the zoning certificates because he was acting under the express authority of the Director, Mr. Travers. According to Mr. Olbrych, he asked Mr. Travers who he wanted to sign the certificate and Mr. Travers responded "You do it." *Plaintiff's Memorandum, at 17.* Assuming this is true, the pertinent

question becomes whether this response conferred actual authority on Mr. Olbrych. In other words, was Mr. Travers duly authorized to delegate this authority to Mr. Olbrych? Plaintiff does not address this fundamental question because the answer is clear: there is nothing in the Pawtucket Zoning Ordinance that allows Mr. Travers to delegate this authority to Mr. Olbrych. The Pawtucket Ordinances do not allow Mr. Travers to delegate his authority and do not grant actual authority to Mr. Olbrych to bind the City. A party dealing with a municipality is bound, at his or her own peril, to know the extent of the officer's capacity. *Casa DiMario, Inc., 763 A.2d at 612.* It is clear that Mr. Olbrych did not have actual authority to issue the zoning certificates and bind the City.

Although the failure to prove that Mr. Olbrych had actual authority to bind the City dooms Plaintiff's equitable estoppel/detrimental reliance claim, Defendants must address one other aspect of Plaintiff's argument. Defendants contend one of the elements of equitable estoppel/detrimental reliance is actual and justifiable reliance by Plaintiff, on the representation, to its detriment. *See El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1234 (R.I. 2000)*. Plaintiff contends, however, that it need not show actual and justifiable reliance but must only show proof of substantial prejudice incurred in good faith. *Plaintiff's Memorandum, at 18*. The reason for this argument is clear: Plaintiff could not justifiably rely on the certificates for anything. Plaintiff was only at the first step in the long process to gain acceptance of its proposed refuse transfer station. For Plaintiff to expend "millions of dollars" based on these certificates was not justifiable as a matter of law.

In support of its argument that it must only show proof of substantial prejudice incurred in good faith, Plaintiff cites a string of Rhode Island zoning cases, most notably, *Shalvey v.*

*Zoning Bd. of Review of the City of Warwick, 210 A.2d 589 (R.I. 1965), Jones v. Rommell, 521 A.2d 543 (R.I. 1987) and Tantimonaco v. Zoning Bd. of Review of the Town of Johnston, 218 A.2d 480 (R.I. 1967).* However, these zoning cases are not germane to the issue in the instant case.[1] Those cases stand for the proposition that "building permits lawfully issued for a permitted use should be immune to impairment or revocation by reason of a subsequent amendment to the zoning ordinance when the holders thereof, acting in reliance thereon in good faith, initiate construction in some reasonably substantial measure or incur some reasonably substantial obligation promoting such construction." *Shalvey, 210 A.2d at 593-594.* First, a building permit was not issued in the instant case. Once again, Plaintiff was only at the beginning stage of seeking approval for a building permit. Second, there was no amendment of the zoning ordinance and, lastly, Plaintiff had not initiated any *construction* in any reasonably substantial measure. These cases are simply not applicable to the issues in the instant case. Defendants maintain that the case law is clear: for Plaintiff to prove equitable estoppel/detrimental reliance, justifiable reliance is an essential element. On the undisputed facts of this case, Plaintiff cannot prove justifiable reliance as a matter of law.

For the reasons set forth herein, and in Defendants' previously filed Memorandum, Defendants respectfully request that this Court grant Defendants' motion for summary judgment on Counts III and IV of Plaintiff's Complaint.

---

[1] Even if these cases were somehow relevant, it is far from an undisputed fact that Plaintiff acted in good faith and/or expended substantial sums of money. For example, the mere fact that Plaintiff entered into lease agreements does not, in and of itself, prove that it was done in good faith especially when Plaintiff entered into these arrangements and expended money after it received notice questioning whether a private refuse transfer station was a permitted use of the Property. See *infra*.

## III. CONTRACT INTERFERENCE CLAIMS

In assessing Plaintiff's contractual interference claims, it is important to revisit the facts of this case, specifically the dates of various filings and notices by the parties. The initial Site Plan Application filed by Plaintiff in this case was incomplete, requiring Plaintiff to file a second one. The second Site Plan Application was filed on March 30, 2004. Unfortunately for Plaintiff, this second one also contained missing information. Plaintiff produced this information and filed a completed second Site Plan Application on or about April 28, 2004. The following day, on April 29, 2004, Michael Cassidy notified Plaintiff, by letter, that he believed the zoning certificate – which stated that a private refuse transfer station was an allowable use for the Property – was issued in error. Therefore, he had referred the matter to the Law Department for a legal opinion on whether Plaintiff's proposed use was allowable under the Zoning Ordinance. If it was not an allowable use, Plaintiff would need Zoning Board approval. *See Defendants' Memorandum at 4-8 for a more complete statement of the facts.* The date of the claimed interference, therefore, is April 29, 2004.

The initial elements that Plaintiff must prove for its contract interference claims are a contract or business relationship and Defendants knowledge of that contract or relationship. The contract and business relationship that Plaintiff relies on are the lease agreements with P&W Railroad and Infinity Rail. *Plaintiff's Memorandum, at 21*. According to Plaintiff, "[t]he City's knowledge [of these contracts] is plain on the face of the Certificate of Zoning Compliance, which states that PTO plans to use the site as a 'refuse transfer station'. . . . The City therefore knew that plaintiff expected to develop the site for that purpose." Id. However, in asserting a claim for contract or business interference, the issue is not Defendants' knowledge of the

intended use of the property. The issue is Defendants' knowledge of the P&W Railroad and Infinity leases. Proving that Defendants knew that Plaintiff intended to use the property as a private refuse transfer station, does not prove that Defendants had knowledge of these two leases.

Plaintiff produces no evidence that Defendants had any knowledge of the Infinity Rail lease or business relationship. In fact, Plaintiff has not produced the lease. The only "evidence" of the lease is contained in the affidavits of Daniel Poggi and Marlene Wheaton.[2] *Plaintiff's Exhibits 1 and ,3 respectively*. Both affidavits state that Plaintiff entered into a long-term lease with Infinity Rail but both leave out an important fact, namely, the date the lease was entered into by the parties. The only date Plaintiff does offer is the date it began paying rent to Infiniti. Even at that, Plaintiff offers only an approximate date – February, 2005. This date is well after April 29, 2004, the date on which the City notified Plaintiff that the City Planning Commission had questions about whether a transfer station was a permitted use for the property. So, on April 29, 2004, the date of the alleged interference, the lease that Plaintiff claims Defendants interfered with was not in existence. With respect to Infiniti Rail lease, or the Infiniti Rail business relationship or expectancy, Plaintiff has not only not proven that Defendants had knowledge of it; Defendants could not have known about it because it was not in existence.

The P&W Railroad lease was also entered into after April 29, 2004. According to Ms. Wheaton, Plaintiff entered into the P&W Railroad lease on August 31, 2004. Obviously, Defendants could not have known about this lease on the date of the alleged interference because it was not in existence. In its memorandum, Plaintiff states that Defendants "acknowledge

[2] Mr. Poggi identifies himself as the manager of Plaintiff corporation while Ms. Wheaton identifies herself as the Corporate Controller for a corporation that is a majority owner of Plaintiff.

receiving in April, 2004 a copy of a letter from P&W Railroad's general counsel describing the lease P&W had agreed to enter with PTO. PTO manager Daniel Poggi also described the entire anticipated operation to the Zoning Board of Review." *Plaintiff's Memorandum, at 22*. While this statement contains some elements of truth, close examination of this statement reveals that it is not helpful to Plaintiff. When Plaintiff filed its second Site Plan Application on March 30, 2004, it was incomplete. On April 6, 2004, Mr. Cassidy wrote to Plaintiff requesting additional information to complete the application. Among the documents requested was a letter from P&W identifying the agreement for specific uses at the site listed according to RIDEM definitions. *A copy of the April 6, 2004 letter is attached hereto as Exhibit I.*[3] On April 28, 2004, when Plaintiff filed the other items to complete its application, it also filed the letter from Ms. Tanona. *A copy of Ms. Tanona's letter, received on April 20, 2004, is attached hereto as Exhibit J*. The Tanona letter does not indicate the existence of a lease. On the contrary, it indicates that a lease agreement had not been entered into by the parties. Ms. Tanona states that P&W had only agreed to lease the Property to PTO **subject to the execution of a mutually agreeable lease agreement and subject to PTO's ability to obtain the necessary permits to develop the Property in accordance with PTO's planned operations.** It is not a surprise that Plaintiff has not attached a copy of the Tanona letter to its memorandum because, clearly, there was no lease agreement in existence before April 29, 2004.[4] Apparently, the parties were able to agree on a lease **four months later**. But this date is well past the April 29, 2004 alleged interference date. Similar to the Infiniti Rail lease, Plaintiff cannot prove the existence of a

[3] Defendants have elected to follow the order of the exhibits from their initial memorandum.
[4] Furthermore, even if a lease did exist, it is evident that it would not be enforceable because it was subject to permit approval. Defendants note that Plaintiff has also neglected to provide the Court with a copy of the lease.

contract or business relationship and/or knowledge of that contract or business relationship by Defendants. The undisputed facts of this case prove that Plaintiff cannot satisfy the first two elements of its contractual interference claims.

Even if Plaintiff could establish the existence of a contract and Defendants' knowledge of it, Plaintiff has not satisfied the remaining elements necessary to prove its contractual and business interference claims. Plaintiff has the burden of proving an intentional act of interference by Defendants. This element requires that Plaintiff prove the existence of legal malice, i.e., an intent to do harm without justification. *Belliveau Building Corporation v. O'Coin, 763 A.2d 622, 627 (R.I. 2000)*. Plaintiff argues that the Superior Court decision proves legal malice. However, the Superior Court decision is not "evidence". The decision has been appealed to the Rhode Island Supreme Court and it is certainly conceivable that the Supreme Court could reverse the decision of the Superior Court. Moreover, Plaintiff has not set forth any facts whatsoever to show legal malice.

On an even more basic level, there has been no interference, by Defendants, with these two contracts or business relationships. According to Plaintiff, it entered into the leases with Infiniti Rail and P&W and has been fulfilling the terms of these contracts. The actions of the City have not interfered with these contracts or business relationships. In fact, according to the Tanona letter, the failure to obtain the necessary permits was to be factored into any subsequently agreed upon lease agreement.

Plaintiff has also failed to prove damages. It has not produced the alleged lease agreements. It has not produced any evidence of the payment of money to anyone. There is no explanation for the requested management expenses. Plaintiff has produced no evidence to

support its claim for lost profits. On its face, the manner in which the damage claim has been presented calls the entire claim into question. Even if Plaintiff had presented sufficient evidence to prove damages, it would fail for ripeness. Plaintiff has not proven that it would have received City and/or State approval for its proposed use.

For the reasons contained herein, and in Defendants' previously filed Memorandum, Defendants respectfully request that summary judgment enter in their favor on Counts V and VI of Plaintiff's Complaint.

## IV. PROCEDURAL DUE PROCESS

Plaintiff sets forth two arguments in its objection to Defendants' procedural due process argument. First, Plaintiff argues that it has a property interest because the zoning certificate was issued under § 410-96 rather than § 410-93 of the zoning ordinance. Second, it claims that it was entitled to a pre-deprivation hearing.

In this case, it does not matter under which section of the Pawtucket Zoning Ordinance the zoning certificates were issued. These certificates, in and of themselves, do not create a constitutionally protected property interest. They are simply the opinion of a building official of what is an allowable use in the area. Whether the use is in fact allowable is not established by the certificates; instead, it is dependent on the zoning ordinance. It is the zoning ordinance that creates the right to use a particular property for a particular use. For example, if Mr. Olbrych had presented Plaintiff with a zoning certificate which stated that the Property could be used as a nuclear waste dump, Plaintiff certainly could not argue that it had a constitutionally protected property interest in that use unless, of course, the zoning ordinance allowed nuclear waste dumps

in that area. It is the ordinance that creates the use, not the zoning certificate. So, in the instant case, the zoning certificates did not create a constitutionally protected property right.

Plaintiff contends that "Pawtucket law unconditionally allows PTO to operate a refuse transfer station in a "Manufacturing Open" zone [because] [t]he Rhode Island Superior Court has definitely so held." *Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, at 10*. However, that statement is not only untrue; it misses the mark. The decision of the Superior Court simply states that a refuse transfer station is an allowable use for the Property under the Pawtucket Zoning Ordinance.[5] It does not allow Plaintiff to operate anything because Plaintiff must still proceed through the regulatory process. The decision, if upheld by the Supreme Court, simply allows Plaintiff to bypass one aspect of this regulatory process, i.e., Plaintiff does not need zoning board approval to proceed before the City Plan Commission.

Plaintiff must still comply with all other City and State regulations to actually gain approval to operate a refuse transfer station. The issue of use is simply one stick, in a bundle of sticks, needed to obtain a permit to operate the refuse transfer station. It is too early in the process to state that Plaintiff has acquired a constitutionally protected property interest. There are simply too many other steps and variables in the regulatory process for Plaintiff to claim that it is now entitled to operate a refuse transfer station on the Property. This is why the subject of this case cannot be analogized to the issuance of a building permit; Plaintiff has not yet reached that stage of the process. Plaintiff has not established a constitutionally protected property interest to operate a refuse transfer station.

---

[5] The decision has been appealed by the City and others to the Rhode Island Supreme Court.

Secondly, although Plaintiff claims that it was entitled to a pre-deprivation hearing, it offers no support for this position. The so-called "local law" cited by Plaintiff, § 410-15.1(F)(2) of the Pawtucket Zoning Ordinance, does not require a pre-deprivation hearing. Plaintiff has not presented any analysis or case law that would require a pre-deprivation hearing in these circumstances. Plaintiff cannot establish, under the undisputed facts of this case, that it was entitled to a pre-deprivation hearing or that it was denied procedural process.

For the reasons contained herein, and in Defendants' previously filed Memorandum, Defendants respectfully request that summary judgment enter in their favor on Count I of Plaintiff's Complaint.

**V. SUBSTANTIVE DUE PROCESS**

In support of its substantive due process claim, Plaintiff contends, among other things, that Defendants' actions were both conscience-shocking and lacking any legitimate objective. *Id. at 12*. However, Plaintiff does not support these contentions with any facts or analyses. It is not enough for Plaintiff to simply rest upon mere allegations or denials, it must present affirmative evidence to defeat a properly supported summary judgment motion. *Fed.R.C.P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2502, 2514 (1986).* Moreover, it is not enough to rely on a single reference in the Superior Court bench decision that Zoning Board decision was arbitrary and capricious and then conclude that such a statement transforms Defendants' actions into a constitutional deprivation. This statement by the Superior Court does not mandate a finding of a constitutional deprivation because the standard applied in administrative procedures appeals is different and less stringent that the "truly horrendous

situations" protected by the substantive due process clause. *Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992).*

The arbitrary and capricious comment by the Superior Court in the zoning appeal relates to the appellate review standard employed in administrative appeals. *Romanik v. Meinertz, 2006 R.I. Super. LEXIS 126, at 5-6.* The standard applied to determine whether a governmental action amounts to a deprivation of substantive due process rights, however, is much more stringent. Without repeating the arguments in Defendants' Memorandum, the First Circuit standard is clear: "[i]n the substantive due process context, the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error." *Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).* "Where a license or permit denial [or revocation] is involved, the class of cases which meets the constitutional threshold is narrowly limited." *Collins v. Nuzzo, 244 F.3d 246, 250 & 251 (1st Cir. 2001).* In fact, such a violation has been found to occur only in a "truly horrendous situation." *Nestor Colon Medina, 964 F.2d at 45.* The standard is "unforgiving" and "guards against insinuating the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals." *Id. (internal quotations omitted).*

Substantive due process protection is not triggered by merely unsound or erroneous government decisions. *Rivera v. Fagundo, 310 F. Supp. 2d 428, 435 (D.P.R. 2004).* Rather, "[i]ts use is limited to those specific instances involving egregious abuse of governmental power which the courts find shocking." *Id. citing Collins v. City of Harker Heights, 503 U.S. 115 (1992).*[6]

---

[6] The First Circuit has actually rejected substantive due process claims premised on malicious official action as well as local licensing authority's outright violation of state law. *Amsden, 904 F.2d at 757; Roy v. City of Augusta, 712 F.2d 1517, 1523 (1st Cir. 1983); Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir. 1981). See also Collins, 244 F.3d at 246.*

In Co. of Sacramento v. Lewis, *523 U.S. 833 (1998)*, the United States Supreme Court "clarified the law of substantive due process and made pellucid that conscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action." *DePoutot v. Raffaelly, 424 F.3d 112, 118 n.4 (1st Cir. 2005) (emphasis added) citing Lewis, 523 U.S. at 846-47 and Hawkins v. Freeman, 195 F.3d 732, 738-39 (4th Cir. 1999) (en banc) (underscoring the "shock the conscience" prerequisite in executive action cases*). The First Circuit has also "repeatedly held that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law." *Torromeo v. Town of Fremont, 438 F.3d 113, 118 (1st Cir. 2006) quoting SFW Arecibo Ltd. v. Rodriguez, 415 F.3d 135, 141 (1st Cir. 2005) (internal citations omitted).* Defendants submit that even taking the allegations in the Complaint in the light most favorable to Plaintiff, the allegations fail to rise to the level of a "truly horrendous situation" that shocks the conscience in manner that violates substantive due process guarantees. *See i.e. Blain v. Twp. of Radnor, 167 Fed. Appx. 330 (3d Cir. 2006) (frivolous or non-meritorious appeal, condemnation threat, conflict of interest, and improper denial of a subdivision plan did not rise to the level of impropriety needed to "shock the conscience."); Thornbury Nobel, Ltd. v. Thornbury Township, 2003 U.S. Dist. LEXIS 25985, (October 22, 2004)(holding that in the land use environment, favoring one development over another for the purpose of preserving open*

*space in the township does not shock the conscience or give rise to substantive due process claim).*

For the reasons contained herein, and in Defendants' previously filed Memorandum, Defendants respectfully request that summary judgment enter in their favor on Count II of Plaintiff's Complaint.

## VI. CONCLUSION

For the reasons cited herein, as well as those that may be raised at hearing, Defendants respectfully request that Plaintiff's partial summary judgment motion be denied and summary judgment enter in favor of Defendants on all Counts of Plaintiff's Complaint.

Defendants,
By their attorneys,

*/s/ Marc DeSisto*
*/s/ Michael A. DeSisto*

Marc DeSisto, Esq. (#2757)
Michael A. DeSisto, Esq. (#2444)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com
michael@desistolaw.com

CERTIFICATION

I hereby certify that this document has been electronically filed with the Court and is available for viewing and downloading from the ECF system.

*/s/ Marc DeSisto*
Marc DeSisto, Esq. (#2757)