STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, Sc. SUPERIOR COURT

PAWTUCKET TRANSFER OPERATIONS )
)
)
VS. ) CASE NO: PC/05-0159
)
)
PAWTUCKET ZONING BOARD )

**HEARD BEFORE THE HONORABLE STEPHEN J. FORTUNATO**

**JUNE 22, 2006**

**APPEARANCES**:

RICHARD NICHOLSON, ESQUIRE........FOR THE PLAINTIFF
MICHAEL HORAN, ESQUIRE. ..........FOR THE INTERVENORS
MARGARET LYNCH-GADALETA, ESQUIRE...FOR THE CITY OF PAWTUCKET

PAMELA A. NEWBERG
COURT REPORTER

# CERTIFICATION

I, Pamela A. Newberg, hereby certify that the succeeding pages 1 through 10, inclusive, are a true and accurate transcript of my stenographic notes.

PAMELA A. NEWBERG,
COURT REPORTER

JUNE 22, 2006

A.M. SESSION

THE CLERK: Pawtucket Transfer Operations vs. The City of Pawtucket.

MR. NICHOLSON: Richard Nicholson for the petitioner.

MR. HORAN: Michael Horan for the intervenors.

MS. LYNCH: Margaret Lynch-Gadaleta for the City of Pawtucket.

THE COURT: All right. This matter is here on a zoning appeal pursued by the Pawtucket Transfer Operations, LLC. They're aggrieved by a Pawtucket Zoning Board decision relative to their meaning of the plaintiff's proposed operation of a refuse transfer station in an MO zone in the City of Pawtucket.

While the filings have been somewhat voluminous, I can gather the matter has been vigorously contested during different aspects of the administrative proceedings. The issue that ultimately lands here in Superior Court is not especially complex. It has to do simply with the interpretation of certain provisions of the zoning ordinance.

By way of a short background, on February 27, 2003, the Pawtucket Transfer Operations was issued a Certificate of Zoning Compliance by the City of

Pawtucket, Division of Zoning and Code Enforcement. The certificate revealed that the proposed use of the property in an MO zone was to be as a refuse transfer station and that this use of the property involved, according to that certificate, "Conforms to the zoning ordinance of the City of Pawtucket, Rhode Island."

Seventeen months later, on or about July 12th of 2004, the plaintiff was advised by a letter from the Director of the Department of Planning & Redevelopment for the City of Pawtucket, Michael Cassidy, that their initial certificate was not considered valid by him and his office.

In so many words, Mr. Cassidy said that the refuse transfer station was not permitted under Section 410-12.5(1) of the City's zoning ordinance because it was privately owned. Mr. Cassidy went on to say that there would have to be a use variance in order to effectuate the plaintiff's request to begin operating that facility as a refuse transfer station.

The matter was considered by the zoning board inasmuch as the plaintiffs took an appeal to that body. The appeal was heard on September 28, 2004, and on December 28th of that same year, the zoning board denied the appeal.

As all of the attorneys in this case are aware, the

role of a Superior Court Judge regarding a zoning appeal is deferential to the decision makers below, that is, if there is something on the record, something substantial on the record that can support what they did, then the decision stands regardless of how the Superior Court Judge might have decided if he or she had the case before the Court in the first instance.

The principal question is whether under Section 410-12.5(1) of the zoning ordinance, a privately owned refuse transfer station is permitted to conduct business in an MO industrial zone in the City of Pawtucket.

The decision of the board itself signals the difficulties that they had even though they concluded Mr. Cassidy was correct and that there should be no privately owned refuse station in that zone. As they said in their decision at Page 7, "Whether the proposed use can be deemed either public or semi-public" -- I suppose they meant to include the word use, but they didn't, but "whether the proposed can be deemed either public or semi-public is more problematic for the reason that these terms are vague and are not defined in the zoning ordinance."

And the board goes on to say that they believe it was unreasonable -- excuse me, they go on to say, "In the absence of a definition of these terms, the Board does

not believe that it was unreasonable, capricious or arbitrary for the Planning Director to reach the conclusion that in order for a refuse transfer station to be allowed, it would have to be public or semi-public in nature or, rather, based on his testimony, one which is either wholly or in part operated or managed by the City."

My conclusion is that there is nothing in the ordinance that would permit that conclusion on the part of the zoning board, and that they have arbitrarily and capriciously amended the ordinance and read it in a way that the common, normal usage of the language contained in the ordinance does not permit, the language itself does not permit it, nor does the context in which the provisions are found both in the controversial section of the so-called Table of Use Regulations or with a wider reading of the ordinance.

At Page 410, Attachment 1:2, Number 5 of the Table of Use Regulations, we see under letter I, if I have referred to that as one before, I meant to say I, but, in any event, a refuse transfer station is permitted in an MO zone, a so-called industrial open zone where many things are permitted, including light manufacturing, various public utilities, repair shops, dance studios, and the like.

Now, G under Section 5, says, "Municipal fire station," so that is a permitted use in the MO zone; H says, "Municipal garage"; and J says, "Municipal structure or use not otherwise specified herein."

So we know that the drafters of the zoning ordinance know about the use of the term municipal, which at least in one connotation means something owned or operated by a municipality. Clearly, they did not say municipal refuse transfer station. They could have if that is what they wanted. I'm not so sure that had they used that word, it would have totally eliminated the controversy because one could imagine a municipal garage owned and operated by a private entity but which is open to the general public who are in that area to conduct one kind of business or another. But here the fact remains that the term refuse transfer station is surrounded by references to something or some type of operation or business use or governmental use that the City wants to clarify and say is municipal in nature.

Elsewhere, in the Table of Use Regulations, we find public utility uses. So there is the use of the word public again, and I should say that the argument of the remonstrant, the objectors, is that public or semi-public goes to ownership where the title resides. That seems to be their position that the zoning ordinance

is somehow requiring title to be held by a particular kind of entity as opposed to using public or semi-public to mean use just like a privately owned theater is a public facility. It's open to the public to go and see films or performances there, but the money collected at the door redounds to the benefit of the private owners much like a parking garage might do.

Under Public Utility Uses, which is Number 16 in the Table of Use Regulations, we find several that are permitted in an MO zone, including electric power substation, a public utility pole, a public utility tower and radio or television transmission towers. Now, these would all be using public airways or public space to conduct their business. They're called public utilities because they serve the public even though the owners are private, private corporations and businesses. But here they are referred to as being public.

So there is nothing either definitionally, as the zoning board pointed out, or contextually, as I'm trying to point out, by a reading of the ordinance, that would suggest that the word public or semi-public goes to the question of who has title to the land in question.

Also, of help, I believe in analyzing this situation, is the jurisprudence of our Supreme Court, which makes a distinction in other areas such as

government tort liability between governmental functions and proprietary functions.

"A governmental function," said our Supreme Court in Catone vs. Medberry at 555 A.2d Page 333, "is one which is inherently incapable of being performed by a private individual." Certain activities come to mind, not the least of which would be maintaining a police department or the licensing of drivers, O'Brien vs. The State at 555 A.2.d, and so on.

There are other functions, of course, which our Court has said are proprietary, which means that, "The function is not 'so intertwined with governing that the government is obligated to perform it only by its own agents or employees." That is found in Xavier 479 A.2d at Page 1182 vs. Cianci. If the activity at issue, "was one that a private person or corporation would be likely to carry out," then the activity is a proprietary function." And, in some cases, The Housing Authority of the City of Providence vs. Oropeza, 713 A.2d, that is, a private security operation, even street sweeping, which was the Xavier vs. Cianci case, can be a proprietary function.

I think that on its face the analysis that I gave resolves the issue satisfactorily, but I do think that as an ancillary method of analysis, the whole notion of

governmental verses proprietary function is a valid one especially in light of the fact that the zoning ordinance nowhere designates that the refuse transfer facility must be operated by some governmental entity.

Some reference is also made by the remonstrants that another word not defined in the statute, namely, or the ordinance, namely, refuse, that that doesn't spell things out and, therefore, the only legitimate or, I should say, a legitimate construction, so says the town officials, is that a refuse cannot possibly include construction and demolition debris. That, I think, is also an arbitrary stretch of what the ordinance allows and does not allow.

We know, for instance, that it's uncontradicted that railroads are permitted in the zone, the MO zone, and I glean from the submissions by the parties that there is a railroad track running right by or through or near this proposed facility which the plaintiffs intend to use.

Railroad cars, I can judicially note, can haul things that are larger than paper clips and pens and small baskets. They can haul large things including debris ripped down at construction sites, whether it came off the roof or is an old window and so on. And refuse is, by common definition, things that have been discarded.

Now, the argument is made, well, that must mean they

have no value whatsoever, if I understood one of the submissions. The point is, it's their refuse from the point of view from the people that don't need it anymore, but it could be something of value and, again, the ordinance doesn't require it have no value or any particular value. You can take the refuse now, and apparently there are companies near and far who make large sums of money by recycling debris and refuse or selling it and/or finding another use for it that somebody might have even though the person who discarded it thinks it is of no worth whatsoever.

I gather from the papers, although the zoning official, Mr. Cassidy, seems to approach this as if we are in the middle of some wildlife preserve, this is not the case. In this MO zone are permitted uses of manufacturing companies for chemical products, rubber and miscellaneous plastic products, leather and leather products, should somebody want to have a tannery in Pawtucket, fabricated metal products and services, jewelry and other related industries, indeed plastics and synthetics, chemicals, and Alied products and so on. So to suggest that somehow refuse could not include the kind of debris that this plaintiff is going to be receiving at its facility then apparently hauling away either in trucks or on the railroad is to also stretch the

ordinance or its application to these plaintiffs in a way that is just as unlawful as the interpretation of the zoning board that title must be in a governmental entity in order for there to be a refuse removal operation.

So, for these reasons, the appeal of the plaintiff is sustained. The arguments of the City and the remonstrants are rejected. The matter is remanded to the zoning board to issue the permit to the plaintiff. Okay. Thank you.

MR. NICHOLSON: Thank you, Your Honor.

THE COURT: Okay. I'm going to pass the case. If counsel feels he wants to move for attorney fees, you may do so. All right. The matter is passed.

(ADJOURNED)